Hillsborough-southern judicial district
No. 2009-158

MICHAEL CLARE, TRUSTEE OF HORIZON REALTY TRUST

v.

TOWN OF HUDSON

Argued: January 20, 2010
Opinion Issued: June 16, 2010

*David M. Groff,* of Pelham, on the brief and orally, for the plaintiff.

*Hage Hodes, P.A.,* of Manchester (*Stephen C. Buckley* on the brief and orally), for the defendant.

CONBOY, J. The plaintiff, Michael Clare, appeals a decision of the Superior Court (*Dalianis,* J.) affirming a decision of the planning board for

the Town of Hudson (Town) denying Clare's request to refund the cost of a performance bond filed with the Town. We affirm in part, reverse in part, and remand.

The record evidences the following facts. Clare, as trustee of the Horizon Realty Trust, is one of the developers of the Thurston's Landing subdivision in Hudson. On August 9, 2000, the Town of Hudson Planning Board (planning board) approved the Thurston's Landing West subdivision, but required a performance bond of $81,705 for improvements to Bush Hill Road at its intersection with Flying Rock Road. On September 8, 2000, Horizon Realty Trust paid the Town $81,705, which was used to create and fund a separate Town account (the Bush Hill Road account). On February 7, 2005, the Town paid ABB-Kin & Sons, Inc. $1,500 from the Bush Hill Road account to conduct drill tests on Bush Hill Road to determine the subsurface materials needed for the improvements.

On March 4, 2005, Town Engineer Tom Sommers proposed certain improvements to address "a less than adequate sight distance most specifically in the northerly direction looking from Flying Rock Road without increasing the vehicle speed on Bush Hill Road." Sommers noted that funding was available from the Bush Hill Road account, "which was paid by the Thurstons [sic] Landing developer and specifically marked for this improvement," and which had grown to $86,910 due to accrued interest. The board of selectmen unanimously approved the proposed improvements at a meeting on March 22, 2005. The improvements included smoothing down a "knob in the right of way area" and slightly raising Bush Hill Road at its lowest section. The board of selectmen noted, in connection with the proposal to raise the section of Bush Hill Road, that "[t]he Highway Department is going to be grinding and repaving that area, so they can elevate that by approximately ½-1 foot." As to the financing for these improvements, the selectmen noted: "Funding is available from the developer of Thurston's West, a requirement of the planning process. Any remaining funds will be used for some paving and resurfacing in that general area." The timing of the Bush Hill Road improvements was subject to the relocation of a utility pole.

At some point in 2006, Clare inquired about the status of his performance bond. The Town responded, by letter dated November 15, 2006, that the bond was "being used to complete improvements to the subject intersection." The letter explained that the project, originally scheduled for 2005 but postponed to 2006, would be completed in the spring of 2007 due to third-party delays in the utility work.

An email sent by Road Agent Kevin Burns on July 17, 2007, requested that the Town's Engineering Division execute a purchase order "for the Bush Hill Road improvements," which "work was done under the current

Town Wide Paving Project." The purchase order to Brox Industries, also dated July 17, 2007, showed a deduction of $89,153.95 from the Bush Hill Road account, with the description:

THURSTONS [sic] LANDING WEST BOND

BUSH HILL ROAD IMPROVEMENTS.

BUSH HILL ROAD PAVEMENT COMPLE [sic]

This payment was supported by two field reports from Brox Industries, one reporting, "Reclaimed and grade[d] 33,141 Square Yards of pavement & fine graded" on Bush Hill Road as part of the town-wide paving project between July 5 and July 12, 2007, and the second reporting, "PLACED ¾" Binder" at the same location on July 12, 13, and 16, 2007. Brox Industries' paperwork indicated that the cost for the Bush Hill Road paving work consisted of $55,014.06 for reclaiming and grading, and $196,672.49 for placement of binder. Of the $251,686.55 paid by the Town for the work, $89,153.95 came from the Bush Hill Road account. The check exhausting the Bush Hill Road account was dated August 8, 2007.

In a letter dated August 6, 2007, Clare's attorney inquired about the status of the performance bond posted "for improvements to the Flying Rock Road/ Bush Hill Road intersection." The letter continued: "More than 6 years have now passed since my client posted this bond. The Town has recently repaved Bush Hill Road. It does not appear that any of my client's funds were used for improvements to the intersection for which they were allocated." Clare requested that the planning board review the matter at its next meeting and return to him any bond funds and accrued interest. On August 23, 2007, Clare's counsel again wrote to the Town Planner requesting that the matter be scheduled for planning board review.

The Town responded by letter dated August 24, 2007, reporting that the funds had been encumbered in February 2005, and were spent in part for the 2005 ABB-Kin drill tests, with the remainder spent in July 2007, when "the Town of Hudson contracted with Brox Industries in the amount [of] $89,153.95 to construct road improvements to Bush Hill Road."

By letter dated August 27, 2007, Clare's counsel expressed his disagreement with the Town's position, writing, "Your letter [of August 24, 2007] indicates that the bond funds were spent on general road maintenance, including the recent paving done by Brox Industries in July, 2007. Unfortunately, you did not provide me with any accounting of the Town's expenditure of my client's money." Clare appealed the Town's August 24, 2007 response to the Hudson Community Development Department and to the zoning board of adjustment. Both the department and the zoning board

declined to review the appeal. *See* RSA 676:5, III (2008) (decisions regarding innovative land use controls may not be appealed to the zoning board of adjustment); RSA 674:21, I(m) (Supp. 2009) ("innovative land use controls" include impact fees).

On October 1, 2007, Clare formally applied to the planning board for release of his performance bond. In a memorandum in support of his application, he asserted that "[t]he Town did not perform the proposed improvements to the Bush Hill Road/Flying Rock Road intersection," and that his "bond was not used for its intended purpose within 6 years from the date that it was posted, as required by RSA 674:21(IV)(e)." On October 10, 2007, the planning board voted to deny his application, finding that the bond was properly encumbered and properly spent in accordance with the relevant provisions of the zoning ordinance. The superior court upheld the planning board's decision in an order dated February 2, 2009.

On appeal, Clare contends that the superior court erred in declining to order the return of his bond fund, arguing that the Town violated RSA 674:21, V(c) and (e) by expending the bond fund for a purpose other than the capital improvement for which it was collected. Specifically, he asserts that the bond fund was spent to underwrite the Town's annual road maintenance work, rather than the sight distance improvement project at the Bush Hill Road/Flying Rock Road intersection.

"Our review of the trial court's decision is deferential. We will uphold its decision on appeal unless it is unsupported by the evidence or legally erroneous." *Ferson-Lake, LLC v. City of Nashua*, 159 N.H. 524, 526 (2009) (citations omitted); *see also Summa Humma Enters. v. Town of Tilton*, 151 N.H. 75, 79 (2004). "Superior court review of planning board decisions is equally limited. The superior court is obligated to treat the factual findings of the planning board as *prima facie* lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law." *Ferson-Lake*, 159 N.H. at 526 (citation omitted). "The review by the superior court is not to determine whether it agrees with the planning board's findings, but to determine whether there is evidence upon which they could have been reasonably based." *Id.* "[T]he appealing party must demonstrate that an error of law was committed or must persuade the trial court by the balance of probabilities that the board's decision was unreasonable." *Feins v. Town of Wilmot*, 154 N.H. 715, 717 (2007) (quotations omitted).

We note first that Clare concedes in his brief that his "bond fund was encumbered for the purpose for which it had been collected within six years from the date it was paid, as required by RSA 674:21, V(e)." He has therefore waived his argument as to the timeliness of the Town's action to encumber his bond.

We therefore address Clare's arguments regarding impact fee accounting requirements. RSA 674:21, V provides:

> As used in this section "impact fee" means a fee or assessment imposed upon development, including subdivision, building construction or other land use change, in order to help meet the needs occasioned by that development for the construction or improvement of capital facilities owned or operated by the municipality, including . . . public road systems and rights-of-way.

RSA 674:21, V(c), the provision upon which Clare principally relies, further provides:

> Any impact fee shall be accounted for separately, shall be segregated from the municipality's general fund, may be spent upon order of the municipal governing body, . . . and shall be used solely for the capital improvements for which it was collected, or to recoup the cost of capital improvements made in anticipation of the needs which the fee was collected to meet.

The limitations on impact fees are set forth in RSA 674:21, V(a), which provides:

> The amount of any [impact] fee shall be a proportional share of municipal capital improvement costs which is reasonably related to the capital needs created by the development, and to the benefits accruing to the development from the capital improvements financed by the fee. Upgrading of existing facilities and infrastructures, the need for which is not created by new development, shall not be paid for by impact fees.

Clare asserts that his bond fund was not used for the "capital improvements for which it was collected," but rather for the "[u]pgrading of existing facilities and infrastructures"; that is, upgrading the surface of Bush Hill Road. Thus, he argues, he is entitled to return of his bond fund.

The trial court concluded otherwise, finding that the certified record supported the planning board's finding that the bond fund was used to improve Bush Hill Road, specifically by reclaiming and paving it, and, therefore, "the planning board reasonably concluded that [Clare's] performance bond had been used solely for the capital improvement for which it had been collected."

Clare contests the trial court's findings in two principal respects. First, he questions the timing of the Town's payment of the impact fee fund to Brox Industries, which occurred two days after he reiterated his request

for return of his fund and approximately seven years after he had deposited the fund with the Town. We cannot say that the trial court acted unreasonably in upholding the payment, however, where the paving work took place in July 2007 and the payment occurred August 8, 2007.

Second, Clare disputes the trial court's finding that the bond fund was used for its specified purpose. He asserts that the fund was used for town-wide road improvements. The Town argued before the trial court that Clare ultimately received the sight distance improvement for which his impact fee had been collected, despite the Town's "admittedly not correctly accounting for it," and that it would be nonsensical to require the Town to refund Clare's bond fund after the subject work had been completed.

The certified record contains a memorandum dated October 3, 2007, from Kevin Burns, the Town's Road Agent, to the Town's counsel, explaining:

> This price [including the $89,153.95 from the bond fund] so far is only the money paid to Brox. It does not cover [the Town's] in house labor, equipment and material cost for the road realignment and site [sic] distance improvements. Nor does it include the cost of finish pavement that will [be] completed in July 2008 at an estimated cost of an additional $100,000.

The unknown costs cited in this memorandum were subsequently calculated and submitted to the trial court outside of the certified record, in a "detailed breakdown of the Highway Department's cost related to the Bush Hill Road and the Flying Rock Road intersection improvement project." The trial court initially denied the parties' joint motion to expand the certified record to include this document, but subsequently acknowledged its submission as an appendix to the Town's request for findings of fact and rulings of law. Although neither party appeals the trial court's initial denial of the parties' joint request to expand the record, both parties have included the document in the appendices to their briefs on appeal. In view of the fact that the document was before the trial court for its consideration, and both parties deem it relevant to our analysis, we consider it.

The document, a letter from Burns to Town counsel detailing the Town's costs related to the subject improvements, is marked "REVISED" and dated May 1, 2008. It reports total expenditures in excess of $116,582.59. Of this, the Town's cost for work at the intersection itself was $62,585.54. This amount includes: labor costs; equipment costs; paving materials, such as gravel; the cost of painting traffic lines in the intersection; a $1,500 payment to ABB-Kin and Sons for test drilling (presumably the amount paid out of the Bush Hill Road account in 2005); and a payment to Brox Industries of $21,440 to reclaim, fine grade, compact and pave a section limited to 650 feet of Bush Hill Road and twenty-five feet of Flying Rock Road. The letter

further indicates that $53,997.05 was paid to Brox Industries for reclaiming and repaving an additional 1,700 feet of Bush Hill Road, which the Town considered to be "included with the intent of this project," a cost exclusive of the Town's labor and equipment costs expended in the road repaving. Thus, the Town's own documentation, produced after the filing of Clare's lawsuit and after the Town's exhaustion of the bond fund, indicates that the Town paid Brox Industries only a total of $75,437.05 for work at the subject intersection and along the relevant portion of Bush Hill Road.

The Town maintained accurate records of the petitioner's account, including deposits of interest, up until August 2007. At that time, the entire amount remaining in the account, $89,153.95, was transferred to Brox Industries. The Town's own records, however, reflect that only $75,437.05 was actually attributable to Brox Industries' work on the relevant portion of Bush Hill Road and its intersection with Flying Rock Road. The difference between the sum the Town paid out of the bond fund and the amount Brox earned for the relevant work amounts to $13,716.90.

Before the trial court, the Town argued that, since Clare had received the benefit for which the bond fund was required, the Town's improper accounting should not result in a windfall for him. The Town explained that it expended far more than $13,716.90 to complete the necessary improvements, to Clare's benefit. On appeal, the Town argues that "[i]t was not the trial [c]ourt's job to review the Planning Board's Certified Records with an eye towards making a de novo conclusion on whether the collected impact exaction funds had been used for the specific project for which they had been paid to the Town," but rather to evaluate whether there was evidence to support the planning board's conclusions.

The Town cites the correct legal standard for the trial court's review of a planning board's factual findings. *See* RSA 677:15. Here, however, the issue presented requires us to assess whether the record supports the conclusion that the Town complied with the statutory accounting requirements.

"The interpretation and application of statutes present questions of law, which we review *de novo.*" *Upton v. Town of Hopkinton,* 157 N.H. 115, 118 (2008). "In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." *Id.* at 118-19 (citation omitted). "While we first look to the plain meaning of words to interpret statutes, it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish." *Simonsen v. Town of Derry,* 145 N.H. 382, 386 (2000) (quotations omitted). "Unless we find statutory

language to be ambiguous, we will not examine legislative history. In construing a statute, we will neither consider what the legislature might have said nor add words that it did not see fit to include." *Monahan-Fortin Properties v. Town of Hudson*, 148 N.H. 769, 771 (2002) (citation omitted). These same rules of construction apply to zoning ordinances. *Upton*, 157 N.H. at 119.

■ "While [RSA 674:21] authorizes municipalities to impose impact fees, it comprehensively regulates the municipality's implementation of such fees." *Simonsen*, 145 N.H. at 386. "For example, the statute regulates the amount and uses of such fees, *see* RSA 674:21, V(a), specifies procedures for assessing and collecting such fees, *see* RSA 674:21, V(d), and provides for both an appeal process, *see* RSA 674:21, V(f), and a waiver process, *see* RSA 674:21, V(g)." *Id.* at 386-87. RSA 674:21, V(c) requires that "[a]ny impact fee shall be accounted for separately, shall be segregated from the municipality's general fund . . . and shall be used solely for the capital improvements for which it was collected." By imposing this requirement, as well as the requirement in RSA 674:21, V(a) that the impact fee not be used for construction or improvements not occasioned by the development, the legislature has established that towns are not entitled to collect and expend impact fees for purposes other than those for which they were collected. *Cf. Upton*, 157 N.H. at 120 (discussing relationship between municipal improvements and the proportional cost to be borne by the developer's impact fees).

■ ■ Moreover, the legislature has mandated specific bookkeeping procedures for impact fees: "Any impact fee shall be accounted for separately, shall be segregated from the municipality's general fund, may be spent upon order of the municipal governing body, [and] shall be exempt from all provisions of RSA 32 relative to limitation and expenditure of town moneys." RSA 674:21, V(c). This provision makes clear that the impact fee funds and Town funds are not fungible. In view of these explicit statutory requirements, we conclude that the Town was not authorized to pay the full $89,153.95 from the Bush Hill Road account to Brox Industries, when only $75,437.05 was actually attributable to the work for which the impact fee was collected.

The Town's handling of the bond fund, however, does not require repayment of the entire fund to Clare. The record reflects that $75,437.05 was, in fact, attributable to Brox Industries' work on the relevant portions of Bush Hill Road and Flying Rock Road. We note that Clare's assertion that no sight distance improvements occurred was rebutted by the factual findings of the planning board, which were affirmed by the trial court. Further, we agree with the trial court and the planning board that the

reclamation and paving work is properly included within "capital improvements for which [the bond fund] was collected." The board of selectmen determined in 2005, when they adopted the proposed sight distance improvement plans, that paving would be among the improvements funded by the use of the bond fund. Moreover, the approved plans themselves described significant paving-related modifications, including regrading to lower a knob in the right of way and to elevate the lowest portion of Bush Hill Road. We accordingly affirm the decision of the trial court upholding the planning board to the extent that Clare is not entitled to the return of $75,437.05.

As to the remaining $13,716.90 of the bond fund that the Town paid to Brox Industries, we reverse the trial court's decision. Given the lack of adequate accounting, required by statute, there was no reasonable basis upon which the planning board could have found that this portion of the bond fund was spent for the purpose for which it was collected. Accordingly, we remand for further proceedings consistent with this opinion. *See Ferson-Lake, LLC*, 159 N.H. at 526.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.