Rockingham
No. 2011-496

PROPERTY PORTFOLIO GROUP, LLC

v.

TOWN OF DERRY;

DOM VINCENT, LLC

v.

TOWN OF DERRY

Submitted: June 13, 2012
Opinion Issued: June 29, 2012

*Griffith & Associates, P.L.L.C.*, of Wilton (*John P. Griffith* on the brief), for petitioner Property Portfolio Group, LLC.

Dom Vincent, LLC, filed no brief.

*Boutin & Altieri, P.L.L.C.*, of Londonderry (*Edmund J. Boutin* and *Lynne Guimond Sabean* on the brief), for the respondent.

HICKS, J. Petitioner Property Portfolio Group, LLC (PPG) appeals an order of the Superior Court (*Lewis*, J.) upholding a decision of the planning

board (board) of the respondent, the Town of Derry, to grant the applicant, MTM Realty, LLC (MTM), a waiver from a provision of the town's site plan regulations. *See* RSA 674:44, III(e) (Supp. 2011). We affirm.

The record reflects the following facts. MTM owns property at the corner of West Broadway and Central Street in Derry. West Broadway is north of the property, and Central Street is to its east. PPG owns a residential apartment building on Central Street abutting the property to the south. In 2005, the board granted an application for site plan determination to convert the property from its prior use as a fire station to a restaurant and bar. *See generally Prop. Portfolio Group v. Town of Derry*, 154 N.H. 610 (2006). The lot comprises approximately 11,325 square feet, and the restaurant, known as The Halligan Tavern, covers most of it. An L-shaped parking area with a one-way drive aisle surrounds the building to its west and south, leading from West Broadway to Central Street. To the south of the parking area, a landscaped buffer runs along the lot's southern boundary. A loading zone services the building on its south side. Two covered dumpsters are located at the southwest corner of the lot.

Pursuant to the town's site plan regulations, solid waste storage areas are required to be at least twenty-five feet from any property boundary. *See* DERRY, N.H., LAND DEVELOPMENT CONTROL REGULATIONS, part 3, art. XI, § 170-67(B)(1) (2008) (LDCR). In 2010, as part of an application for further site plan determination, MTM submitted a request for a waiver from this requirement, seeking permission to move the dumpsters closer to its boundary with PPG. Specifically, MTM represented that the dumpsters were then located approximately twenty-three feet from its south lot line and four-and-a-half feet from its west side lot line, and requested approval to move them to a location eighteen feet from its south lot line and three feet from the west lot line.

The town's site plan regulations expressly authorize the board to waive any specific regulation if "unnecessary hardship may result from strict compliance with" it, so long as: (1) the waiver does not "nullify[ ] the intent and purpose of [the] regulations"; (2) the board "requires such conditions as will, in its judgment, secure the objectives of the regulations which are waived"; (3) the request is in writing; (4) the waiver is supported by evidence submitted by the applicant; (5) the board formally votes on the request; and (6) the waiver is noted on the final plan. LDCR § 170-50(A); *see* RSA 674:44, III(e) (requiring site plan review regulations to include a provision allowing for waiver). In its written request for a waiver, MTM asserted that strict compliance with the setback would cause unnecessary hardship because locating the dumpsters so as to comply with the setback would place them so far into the delivery and parking area that they would interfere with the flow of traffic, including delivery and emergency vehicles.

It further asserted that complying with the setback would bring the dumpsters closer to the sidewalks and streets, making them more visible to pedestrian and motor vehicle traffic. Moving the dumpsters to the proposed location, according to MTM, would provide safer access to all areas of the building, and would improve access to the dumpsters by refuse trucks. The waiver would not nullify the intent and purpose of the setback, MTM asserted, because MTM would properly screen and enclose the dumpsters in their new location, and because the dumpsters would be less visible from the street.

The board held a public hearing on the application. At the hearing, MTM represented that its proposal was to move the dumpsters as far from the southwest corner of the building as possible because the area contained a fire lane, and "the maximum amount of feasible space [was required] for safety vehicles and to facilitate traffic around the building." The proposed location, according to MTM, was three feet into the paved portion of the lot, and would "allow[ ] safety vehicles, fire equipment and traffic to come around the corner" of the building. MTM further noted that the proposed location would allow refuse trucks to access the dumpsters from Central Street, would lessen the amount of time required for trucks to access the dumpsters, and would keep the trucks away from the building. MTM concluded that the proposed location was the safest location for the dumpsters, and was the furthest possible distance from the Broadway and Central Street sight lines. PPG opposed the request, asserting that the dumpsters were already unlawfully located, that they negatively affected its ability to rent apartments, that moving them closer would further affect its tenants and encroach on the buffer, and that MTM had not established hardship.

After closing the public hearing portion of the meeting, the board discussed the waiver request, and asked follow-up questions of MTM's representatives. One member asked whether MTM was planning to enclose the dumpsters. MTM represented that while the dumpsters were not at that time enclosed, it would fence them in with fencing as high as the tallest dumpster. When the member asked what type of fence it would use, MTM stated that it was open to suggestions, but that chain link would be the most practical. The member suggested that slats could be added to the fence.

The board then explored the feasibility of locating the dumpsters elsewhere. One member "recalled . . . the only other place to put the dumpster area that would meet the requirements, was the loading zone." When asked whether delivery trucks use the loading zone, MTM confirmed that delivery trucks ordinarily utilize the loading zone. MTM added that the loading zone was behind where gas is delivered to the building. The member then noted that fire safety was a concern because that area was

partially a fire lane, and was also near the gas tank. While locating the dumpsters there might meet the waste storage setback, he observed that it would not satisfy the fire code. Another member added that he "would rather meet the life safety code." At that point, the board voted to accept jurisdiction, and to waive the solid waste storage setback "with the condition that a chain link fence be provided around the area with the appropriate screening."

PPG and another abutter appealed to superior court. *See* RSA 677:15 (Supp. 2011). Among other arguments, PPG contended that the board acted unlawfully by granting the waiver because it had not made specific findings on the record which, PPG claimed, it was obligated to make pursuant to RSA 674:44, III(e). The trial court rejected this argument, reasoning as follows:

> Here, it is true that the Planning Board did not specifically state the basis for its grant of the waiver in the minutes. Yet the minutes do reflect that the Board gave a sufficiently detailed review of the pertinent circumstances, which included Board members trying to determine if there were any reasonable alternatives for the dumpster placement other than to grant the waiver with fencing and screening.

> The Court deems the minutes to reflect sufficiently the basis for the Board's decision for purposes of RSA 674:44, III(e). The minutes show the Board's basis for concluding that the substantive requirements for a waiver were met. It was proper as well for the Board to proceed here through a site plan determination type of process. The dictates for the granting of the pertinent waiver were sufficiently met.

On appeal, PPG argues: (1) the board failed to make findings required under RSA 674:44, III(e); (2) the trial court erred by treating RSA 674:44, III(e) as imposing ministerial or technical requirements that may be met by implication; and (3) the evidence did not support a waiver.

The trial court's review of a planning board decision is limited. *See Ltd. Editions Properties v. Town of Hebron*, 162 N.H. 488, 491 (2011). The trial court must treat the board's factual findings as *prima facie* lawful and reasonable, and cannot set the decision aside absent unreasonableness or identified error of law. *See id.* "The trial court is not to determine whether it agrees with a planning board's findings, but rather whether there is evidence upon which they could have been reasonably based." *Id.* It is the petitioner's burden to demonstrate, by the balance of probabilities, that the board's decision was unreasonable. *See id.* We, in turn, will uphold the trial

court's order unless it is unsupported by the record or legally erroneous, *see id.,* looking to whether a reasonable person could have reached the same decision as did the trial court based upon the same evidence, *see DHB v. Town of Pembroke,* 152 N.H. 314, 319-20 (2005).

The interpretation and application of a statute is, ultimately, a question of law which we review *de novo. Atwater v. Town of Plainfield,* 160 N.H. 503, 507 (2010). Wherever possible, we ascribe the plain and ordinary meanings to the words used in a statute, *see id.* at 508, neither considering what the legislature might have said nor adding language it did not deem necessary, and consulting legislative history only where the statutory language is ambiguous, *see Clare v. Town of Hudson,* 160 N.H. 378, 384-85 (2010).

RSA 674:44, III(e) requires that site plan review regulations adopted by a planning board authorize it to waive any portion of them. A planning board may grant a waiver under the statute if it finds, by majority vote, that either:

> (1) Strict conformity would pose an unnecessary hardship to the applicant and waiver would not be contrary to the spirit and intent of the regulations; or

> (2) Specific circumstances relative to the site plan, or conditions of the land in such site plan, indicate that the waiver will properly carry out the spirit and intent of the regulations.

RSA 674:44, III(e). The statute further requires that "[t]he basis for any waiver granted by the planning board . . . be recorded in the minutes of the board." PPG construes this language as obligating the board to vote specifically on the statutory ground it was acting under, and to record its findings of fact expressly. We disagree.

■ Nothing in RSA 674:44, III(e) obligated the board to make specific findings of fact. Rather, it simply required that the "basis" of the board's decision "be recorded in the minutes." RSA 674:44, III(e). Where the legislature intends that specific findings be made, it has, in other contexts, said so expressly. *See, e.g.,* RSA 458-C:4, IV (2004) (requiring judicial officer, in approving child support agreement that is inconsistent with the child support guidelines, to "enter a written finding or a specific finding on the record that the application of the guidelines would be inappropriate or unjust and state the facts supporting such finding"); RSA 673:13, I (2008) (requiring "written findings of inefficiency, neglect of duty, or malfeasance in office" in order for land use board to remove an appointed member). Accordingly, we decline to read into RSA 674:44, III(e) a requirement,

which the legislature itself did not see fit to include, that the planning board make express findings of fact. *See Clare*, 160 N.H. at 385.

■ The plain meaning of "basis" is "something on which anything is constructed or established . . . : the basic principle: GROUNDWORK." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 182 (unabridged ed. 2002). We construe RSA 674:44, III(e), therefore, to require only that the underlying rationale of the board's decision to grant a waiver be adequately reflected in its minutes. *Cf. Ltd. Editions Properties*, 162 N.H. at 492-93 (finding planning board record adequately reflected reasons for denying subdivision application so as to satisfy RSA 676:4, I(h) (Supp. 2010)). Because the statute is not ambiguous, we need not consider the legislative history offered by PPG in its brief. *See Clare*, 160 N.H. at 384-85.

■ Contrary to PPG's argument, the trial court did not treat RSA 674:44, III(e) as imposing mere ministerial and technical requirements. Rather, it properly reviewed the minutes to determine whether the basis for the decision was adequately reflected. We agree with the trial court that the board's minutes were, in this regard, adequate. The minutes demonstrate the board's concerns that complying with the setback would violate fire code requirements and pose safety risks, and would interfere with MTM's use of a loading zone. The minutes further reflect the board's concern with whether the dumpsters would be adequately screened so as not to undermine the purpose of the setback.

■ We likewise conclude that the record contains more than ample support for the board's decision. MTM presented evidence establishing that the setback caused unnecessary hardship because it interfered with traffic and access to the building by emergency and delivery vehicles, and could not otherwise be complied with safely. MTM presented further evidence that the proposed location was the safest location for the dumpsters, and that fencing and screening them would preserve the overall intent of the setback. The board imposed fencing and adequate screening as a condition to the waiver. Upon this record, we cannot say that the trial court's decision was either unsupported by the evidence or legally erroneous. *See Ltd. Editions Properties*, 162 N.H. at 491.

Because we conclude that the trial court did not err, we need not address the town's argument that any deficiency was procedural and did not impair PPG's opportunity for notice and participation. *See* RSA 676:4, IV (2008). We have reviewed PPG's remaining arguments and conclude that they warrant no extended consideration. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.