**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2019-0475, <u>Bellevue Properties, Inc. v. Town of Conway</u>, the court on April 2, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiff, Bellevue Properties, Inc., appeals orders of the Superior Court (<u>Ignatius</u>, J.) affirming the decision of the planning board (board) for the defendant, the Town of Conway, approving the site plan of the applicants, 13 Green Street Properties, LLC, 1675 WMH, LLC, Barnes Development, LLC, Rock Development, LLC, and Settlers' R2, Inc. (collectively, the developer).

In this case, the developer applied for planning board approval of a site plan showing an approximately 70,000-square-foot supermarket, an approximately 5,000-square-foot building for business and personal services, and required parking, all adjacent to the existing Settlers' Green retail development. The plaintiff owns a hotel also adjacent to Settlers' Green. The proposed market would include a deli and café, which would result in approximately 8,000 square feet inside the market being devoted to food service. The project's parking area would also be subject to an easement, which the parties agree would require the developer to provide an additional 33 parking spaces for a nearby restaurant.

The board found that the town's parking space requirement resulted in unused parking spaces and unnecessary impervious surface. Pursuant to the town's regulations, the board adopted the 1982 Urban Land Institute's (ULI) "Parking Requirements for Shopping Centers" (1982 ULI), which recommends four parking spaces per 1,000 square feet of gross leasable area (GLA) for a retail center that is over 200,000 square feet of GLA, but requires additional parking spaces for food service if the center is under 200,000 square feet of GLA. The board approved the site plan.

On the plaintiff's appeal, <u>see</u> RSA 677:15 (2016), the superior court affirmed the board's approval with the exception of the number of parking spaces. It noted that the development had less than 200,000 square feet of GLA, and that, as a result, the 1982 ULI requires additional parking spaces per

1,000 square feet devoted to food service. Accordingly, it remanded the issue of parking spaces to the board for further consideration. See RSA 677:11 (2016).

Upon remand, the board held another public hearing and addressed the trial court's concerns regarding parking in three independent ways: (1) it waived the town's regulation establishing a required number of parking spaces; (2) it found that, because the development plus the restaurant benefiting from the parking easement constituted 98 percent of the square footage at which the 1982 ULI no longer required additional parking for food service, and because of the development's proximity to additional parking in Settlers' Green, the number of proposed parking spaces satisfied the 1982 ULI; and (3) it found that the 1999 ULI, which the board had "routinely" applied to other projects, which reflected more recent studies of parking needs, and which did not require additional parking spaces for food service in this development, was suitable to meet the parking demands of projects like the one under consideration. On the plaintiff's appeal, the trial court upheld the board's decision on the basis of the waiver.

The plaintiff contends that the trial court erred by finding that the board's decision was within the scope of the remand. The plaintiff further contends that the trial court erred by ruling that the board could have reasonably found that traffic would move safely and freely within the development because the board: (1) improperly reduced the projected number of motor vehicle trips attributable to the development; and (2) had insufficient evidence to support its decision.

The trial court's review of a planning board decision is limited. Prop. Portfolio Group v. Town of Derry, 163 N.H. 754, 757 (2012). The trial court must treat the board's factual findings as prima facie lawful and reasonable and cannot set the decision aside absent unreasonableness or identified error of law. Id. The trial court is not to determine whether it agrees with the board's findings, but rather whether there is evidence upon which they could have been reasonably based. Id. The plaintiff bears the burden to demonstrate, by the balance of probabilities, that the board's decision was unreasonable. Id.

Our review of the trial court is similarly deferential. We will uphold the trial court's order unless it is unsupported by the record or legally erroneous, looking to whether a reasonable person could have reached the same decision as did the trial court based upon the same evidence. Id. at 757-58.

We first address whether the trial court erred by finding that the board did not exceed the scope of remand. In its order remanding the issue of parking spaces, the trial court determined that "based upon the Board's lack of findings and the fact that [the plaintiff] consistently challenged the number of

2

proposed parking spaces[,] . . . this issue merits further consideration by the Board." The trial court stated that it could not "reconcile the Board's decision with the evidence before it, and thus, . . . [could not] conclude that the Board's decision was both lawful and reasonable." The trial court directed the developer to "demonstrate, to the Board's satisfaction, that it will provide sufficient parking spaces to satisfy both the easement [identified as requiring 33 parking spaces] . . . and the Urban Land Institute's 'Parking Requirements for Shopping Centers.'" The trial court "encourage[d] the Board to closely examine the evidence before it and the ULI standard, and to record its reasoning within its minutes."

The plaintiff argues that: (1) the superior court's order "was a specific instruction requiring [the developer] to prove to the [board] that they had proposed 849 parking spaces in order to satisfy the [restaurant's] parking easement and the 1982" ULI; and (2) the board's "actions during the limited remand hearing were contrary to the specific mandate of the Superior Court." However, on appeal, the superior court concluded that: (1) the town's planning regulations allowed the board to waive any requirement; (2) the court's remand order "neither modified nor eliminated the Board's authority to grant waivers"; and (3) the board's decision to waive the parking requirements "ensured that [the developer's] site plan review application complied with the relevant regulations." We conclude that the trial court's interpretation of its prior remand order was not erroneous. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (stating interpretation of trial court order is question of law, which we review de novo).

We next address whether the trial court erred by holding that the board could have reasonably found that, after construction, the traffic within the development would move safely, as required by the town regulations. The developer's traffic expert explained to the board that the 10 percent reduction in trips generated by the development reflected those trips where a person went to both the market and the retail stores. He represented that 10 percent was a compromise; the traffic study stated that a reduction of 20 to 30 percent could be appropriate. The plaintiff argues that the 10 percent reduction was not justified because customers would not walk between the new market and the existing retail stores. However, the board was entitled to credit the developer's expert's testimony. See Harborside Assocs. v. Parade Residence Hotel, 162 N.H. 508, 519 (2011) (stating ZBA has authority to resolve conflicts in evidence and assess credibility).

Finally, we address whether the board's decision that the traffic generated by the project would move freely and safely within the development was supported by the evidence. The evidence before the board included: (1) a study of the impact of the projected traffic upon the plaintiff's hotel entrance and exit, concluding that the development "will have no discern[i]ble impact on

3

the operation or the queue lengths of the hotel accesses or the adjacent intersections"; (2) a letter from the town's police chief stating that he found "no potential problem for vehicular or pedestrian traffic and safety" and that there was "sufficient access for emergency police vehicles"; (3) a letter from the town's fire chief stating that "[t]he fire department has no issues or concerns at this time" with the development; (4) statements by board members that the adjacent retail stores had excess parking spaces that were not utilized, "even in the most crowded part of the years," see Ltd. Editions Properties v. Town of Hebron, 162 N.H. 488, 497 (2011) (stating planning board entitled to rely in part on its own judgment and experience); (5) the number of anticipated trips generated by the development; and (6) technical drawings showing internal roads and parking lots in detail. Furthermore, the town's site plan review regulations governing driveway widths, aisle widths, parking layouts, and traffic control islands, addressed the safe flow of traffic within the development. The trial court found that by relying on this information, the planning board "reasonably could have found that traffic would circulate freely and safely through the proposed parking lots."

The plaintiff contends that the board could not find that traffic would move safely within the development unless it considered "approvals and encumbrances as they relate to the various shared parking arrangements among the lots within Settlers['] Green." However, it does not explain how those arrangements affect the development's internal traffic. See State v. Blackmer, 149 N.H. 47, 49 (2003) (stating that we will not consider arguments that are not fully developed on appeal).

The plaintiff further contends that the board could not have relied upon the evidence before it to infer that traffic would move safely within the development because: (1) the proposed market was large and constituted a use "foreign" to the existing retail center; and (2) the developer did not "analyze" future traffic patterns within the development. On the contrary, we conclude that a reasonable person could have reached the same decision as did the trial court based upon the same evidence. See Prop. Portfolio, 163 N.H. at 757-58.

Affirmed.

Hicks, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**