## THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2020-0001, <u>Robert McDonald v. Town of Raymond Planning Board; Robert K. McDonald & a. v. Town of Raymond Zoning Board of Adjustment</u>, the court on April 16, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The plaintiffs, Robert and Kathleen McDonald, appeal an order of the Superior Court (<u>Delker</u>, J.) upholding the decision of the defendant, the Town of Raymond (Town) Planning Board (board), granting conditional site plan approval to the intervenor, Mardan Investment Group (Mardan), for a condominium development project in Raymond.[1] We affirm.

We repeat the relevant facts recited by the trial court in its order. The development at issue is situated on property currently owned by Mardan and consists of 172 townhomes in 43 buildings connected by a cul-de-sac-style network of roads. In 2016, Mardan's predecessor-in-interest, Sterling Homes, LLC (Sterling), engaged in a nonbinding discussion about the project with the board. Sterling acknowledged that the project's proposed road network did not comply with Town regulations in certain respects, but explained that the roads were designed to give the development a "slow-moving neighborhood type feel." Sterling also expressed its intent that the road network in the development would never be made public.

In March 2017, Mardan submitted a site plan review application for the project, which was accepted as complete for review in June. It was noted that Mardan was seeking a waiver of all requirements that the project meet the Town's road standards.

In September, the board denied the request for waiver of the requirement that the Town have a 50-foot-wide right of way along the private road network. The board encouraged Mardan to submit a revised project design that would not require that waiver.

---

[1] To the extent the McDonalds also appeal the trial court's decision upholding a related decision of the Town of Raymond Zoning Board of Adjustment, they fail to brief any argument related to that decision that they raised in their notice of appeal. Accordingly, we deem those arguments waived. <u>See</u> <u>Girard v. Town of Plymouth</u>, 172 N.H. 576, 591 (2019).

In October, Mardan submitted four different plans, each showing public roads designed to Town standards and, therefore, requiring no waiver. At a November board meeting, a Mardan representative indicated that the redesigned roads would cost less to build, but would not provide the neighborhood, community-based character Mardan had hoped to achieve. The representative also noted that eliminating the neighborhood, community-based character would lower sales prices. Several board members expressed a preference for the prior design over the new plans, and it was suggested that the original plan could be modified slightly to reduce the need for waivers. The board requested that Mardan proceed with a minimally-revised original plan, which would show a potential 50-foot-wide right of way and identify the waivers that would be required at each point in the development's road network.

Mardan sent a new waiver request package to the board in December, indicating the points on the private roadway network where it was requesting waivers. The only revision from the original plan was the relocation of one building to accommodate the potential 50-foot-wide right of way now depicted on the revised plan. In January 2018, the board granted several of Mardan's requested waivers, including waiver of the requirement that private roads meet Town standards.

Following several objections by the McDonalds' counsel to the depicted 50-foot-wide right of way, the board clarified that, although it believed the revised plan complied with the right of way requirement, it nevertheless reconsidered its September 2017 vote to deny waiver of that requirement, and, instead, now granted that waiver. The board, thereafter, voted to waive additional road standard requirements.

In May, the board granted the last remaining waiver request, which related to driveway slopes, and, in October, conditionally approved Mardan's application. The McDonalds filed a petition for certiorari in superior court, seeking review of the board's conditional approval of the project. The trial court affirmed the board's decision, and the McDonalds now appeal, challenging only the board's finding, and the trial court's affirmance, that Mardan proved unnecessary hardship.

The superior court's review of a planning board decision is limited. Prop. Portfolio Group v. Town of Derry, 163 N.H. 754, 757 (2012). The superior court "must treat the board's factual findings as prima facie lawful and reasonable, and cannot set the decision aside absent unreasonableness or identified error of law." Id. "The appealing party bears the burden of persuading the trial court that, by the balance of probabilities, the board's decision was unreasonable." Summa Humma Enters. v. Town of Tilton, 151 N.H. 75, 79 (2004). "The review by the superior court is not to determine whether it agrees with the planning board's findings, but to determine whether there is evidence upon which they could have been reasonably based." Id.

Our review of the superior court's decision is similarly limited. Girard v. Town of Plymouth, 172 N.H. 576, 581 (2019). We will uphold the decision on appeal "unless it is unsupported by the record or legally erroneous, looking to whether a reasonable person could have reached the same decision as did the trial court based upon the same evidence." Prop. Portfolio Group, 163 N.H. at 757-58 (citation omitted).

The McDonalds first argue that the board and the trial court erred in failing to apply the same unnecessary hardship standard that applies to variances. In the alternative, they argue that "'hardship to the applicant' must include proof of financial hardship, for which no evidence was offered." We address each argument in turn.

The McDonalds note that, in the context of variances, unnecessary hardship is statutorily defined in relation to "special conditions of the property that distinguish it from other properties in the area." RSA 674:33, I(b)(1) (Supp. 2020). They also acknowledge that the statute relating to site plan review regulations permits such regulations to include provision for their waiver if "[s]trict conformity would pose an unnecessary hardship to the applicant and waiver would not be contrary to the spirit and intent of the regulations." RSA 674:44, III(e)(1) (2016). They argue, "[h]owever, [that] because [our] variance cases often use words indicating the object of the hardship is the applicant, but the analysis remains focused on the property, it appears that the variance standard applies equally to waivers." They therefore conclude that, "the focus of the analysis in waiver cases should be on the land," and that because "there was no showing of any unnecessary hardship concerning the land," the board applied an erroneous standard. We disagree.

The statutes are clear: the unnecessary hardship standard for a variance references conditions of the property, see RSA 674:33, I(b)(1); the unnecessary hardship prong of the waiver from site plan regulations does not, see RSA 674:44, III(e)(1). We will not read into RSA 674:44, III(e)(1) language that the legislature did not see fit to include and, accordingly, we reject the McDonalds' contention that the board applied an erroneous standard for determining unnecessary hardship. See Girard, 172 N.H. at 582 (noting that, in interpreting statutes, we will not consider what the legislature might have said or add language to statute that the legislature did not see fit to include).

The McDonalds next argue that the phrase "unnecessary hardship to the applicant" in RSA 674:44, III(e)(1) must "mean the impact on the developer's financial circumstances," and that the board erred when it "did not consider the financial impact on [Mardan]." Further, the McDonalds contend that no evidence of financial hardship to Mardan was introduced. Rather, according to the McDonalds, Mardan "conceded, and even advocated, that its design choices were aesthetic, and not financial." (Footnote omitted.) However, the McDonalds cite no case or statute equating the unnecessary hardship standard

of RSA 674:44, III(e)(1) to "impact on the developer's financial circumstances." To the contrary, in Property Portfolio Group, for instance, we concluded that there was "more than ample support" in the record to support the planning board's waiver of a setback requirement where the applicant "presented evidence establishing that the setback caused unnecessary hardship because it interfered with traffic and access to the building by emergency and delivery vehicles, and could not otherwise be complied with safely." Prop. Portfolio Group, 163 N.H. at 759.

Citing Auger v. Town of Strafford, 156 N.H. 64 (2007), the McDonalds argue that "waivers are not for the purpose of the Planning Board to choose the most attractive design." Auger, however, does not support the McDonalds' position. In Auger, we held that the town's planning board erred by waiving a subdivision regulation's ten-lot requirement because it "had no evidence before it that [a] loop road configuration would cause any hardship to [the developer], much less 'undue hardship.'" Auger, 156 N.H. at 65, 67. Instead, the "record reveal[ed] that the sole reason that the board decided to waive the ten-lot requirement was because it preferred the cul-de-sac design, not because the loop road design would cause 'undue hardship or injustice' to" the developer. Id.

Here, by contrast, there was evidence before the board of undue hardship to Mardan. The court found that interference with Mardan's "objective of creating a meandering network of walkable[] neighborhoods with slow-moving traffic" constituted, in part, undue hardship with respect to all but one of the waivers at issue. As the trial court explained:

> During the Planning Board's consideration of the project, it was noted that the lowest speed limit set forth in the Town standards is 30 miles per hour. In constructing this project, however, Mardan sought to utilize a speed limit of 15 miles per hour, and to incorporate passive speed control measures to force drivers to abide by that limit. This was particularly important because, as a private roadway network, unit owners could not rely on police officers to enforce the speed limit within the project.
> While the site plan application was pending, Mardan presented evidence to the Planning Board that although it could design a project that contained the same density without obtaining the waivers at issue, the resulting roads would encourage higher speeds. Mardan also presented evidence that current market demands favor the more walkable communities, and thus sales prices would be higher under Mardan's proposed design. In light of this evidence, it was reasonable for the Planning Board to conclude that Mardan would suffer unnecessary hardship — in the form of, among other things, lower sales prices — if the Planning Board did not grant the waivers at issue.

With respect to the last waiver — allowing use of plastic, rather than concrete, pipe — the trial court noted the board chairman's own statement that the concrete pipe standard was "woefully outdated" and that equivalent plastic pipe was generally considered better than concrete. (Quotation omitted.) The court therefore found it "reasonable for the [board] to conclude that forcing Mardan to use an inferior, higher-priced product would result in unnecessary hardship to Mardan."

The McDonalds nevertheless contend that "[t]o the extent Mardan or its attorney asserted that its preferred design would be most marketable, it offered opinion, but no data." (Footnote omitted.) We disagree that this constituted a lack of evidence. We rejected a similar claim in Harborside Associates v. Parade Residence Hotel, 162 N.H. 508 (2011). There, the abutter argued that there was no evidence before the zoning board that the marquee signs at issue would not diminish surrounding property values. Harborside Assocs., 162 N.H. at 519. The abutter acknowledged that the applicant's attorney had "represented this to be the case," but argued that "the attorney's statement did not constitute credible evidence." Id. We disagreed, noting that it was for the zoning board "to resolve conflicts in evidence and assess the credibility of the offers of proof." Id. Similarly, here, it was for the board to assess the credibility of Mardan's representations and proffered opinions on the relative marketability of the alternative designs.

For all of the above reasons, we affirm the trial court's order.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**