NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2017-0536


DAVID F. DIETZ & a.

v.

TOWN OF TUFTONBORO

Argued: May 9, 2018
Opinion Issued: January 8, 2019


Wadleigh, Starr & Peters, PLLC, of Manchester (Michael J. Tierney on the brief and orally), for the plaintiffs.


Sager & Smith, PLLC, of Ossipee, for the defendant, filed no brief.


Hinckley, Allen & Snyder, LLP, of Manchester (John L. Arnold and Daniel M. Deschenes on the brief, and Mr. Arnold orally), for the intervenor.


BASSETT, J. The plaintiffs, David F. and Katherine W. Dietz, appeal an order of the Superior Court (Fauver, J.) upholding a decision by the zoning board of adjustment (ZBA) for the defendant, the Town of Tuftonboro, to grant to the intervenor, Sawyer Point Realty, LLC (collectively with Sawyer Point Realty Trust, its predecessor in interest, Sawyer Point), two equitable waivers related to two additions Sawyer Point constructed on its house in violation of

the Town's zoning ordinance requiring a fifty-foot setback from Lake Winnipesaukee.  We affirm.

The trial court recited in its narrative order, or the record supports, the following relevant facts.  Sawyer Point's house is located along the shore of Lake Winnipesaukee and within the Town's Lakefront Residential Zoning District (District).  The Dietzes own the abutting property, which is also within the District.  Section 4.2 of the Town's zoning ordinance requires a minimum fifty-foot setback from the lake for buildings located within the District.

In 1999, Sawyer Point added a second floor addition over the eastern portion of the first floor of its house (1999 Addition).  At the time of the 1999 Addition, Sawyer Point was aware that the existing structure was located within the setback, and that the second floor addition would, therefore, also be within the setback.  Prior to construction, Sawyer Point's principal, Laurel Luby, provided Sawyer Point's builder, David Braun, with an interior floor plan of the house, which showed that the house was situated less than fifty feet from the lake.  Braun then submitted a building permit application to the Town containing a rough sketch of the existing house, which also showed that the house was situated less than fifty feet from the lake.  On February 8, 1999, the Town's building inspector granted the building permit, noting the addition would cause "no change in footprint."  Sawyer Point then constructed the addition.

In 2008-2009, Sawyer Point constructed a second addition to its house, adding a second floor over the existing enclosed porch as well as an addition off the side of the structure facing away from the lake (2008 Addition).  Prior to obtaining a building permit for the 2008 Addition, Braun determined that portions of the addition would be within the setback, and, accordingly, submitted a variance application to the ZBA on behalf of Sawyer Point.  After a hearing, the ZBA unanimously approved the variance and issued a building permit.

In February 2014, Sawyer Point commissioned a survey of its property.  The survey revealed that, in regard to the 2008 Addition, more of the new structure was within the setback than had been represented to the ZBA.  In December 2014, the Dietzes, after learning of this discrepancy, sought injunctive relief against Sawyer Point, claiming that Sawyer Point had built within the setback without obtaining the required approvals, and requesting that the court order the removal of the unlawful construction.  See RSA 676:15 (2016).  Thereafter, Sawyer Point applied to the ZBA for equitable waivers pursuant to RSA 674:33-a (2016) for the portion of the 1999 Addition within the setback, and the approximately fifty square-foot portion of the 2008 Addition that is within the setback but is not within the scope of the 2008 variance.  The ZBA granted the equitable waivers and subsequently denied the

Dietzes' request for a rehearing. The Dietzes appealed to the superior court, which upheld the ZBA's decision. This appeal followed.

Because resolution of this appeal requires us to interpret the equitable waiver statute, we set forth the pertinent provisions of RSA 674:33-a:

I. When a lot or other division of land, or structure thereupon, is discovered to be in violation of a physical layout or dimensional requirement imposed by a zoning ordinance enacted pursuant to RSA 674:16, the zoning board of adjustment shall, upon application by and with the burden of proof on the property owner, grant an equitable waiver from the requirement, if and only if the board makes all of the following findings:

(a) That the violation was not noticed or discovered by any owner, former owner, owner's agent or representative, or municipal official, until after a structure in violation had been substantially completed, or until after a lot or other division of land in violation had been subdivided by conveyance to a bona fide purchaser for value;

(b) That the violation was not an outcome of ignorance of the law or ordinance, failure to inquire, obfuscation, misrepresentation, or bad faith on the part of any owner, owner's agent or representative, but was instead caused by either a good faith error in measurement or calculation made by an owner or owner's agent, or by an error in ordinance interpretation or applicability made by a municipal official in the process of issuing a permit over which that official had authority;

(c) That the physical or dimensional violation does not constitute a public or private nuisance, nor diminish the value of other property in the area, nor interfere with or adversely affect any present or permissible future uses of any such property; and

(d) That due to the degree of past construction or investment made in ignorance of the facts constituting the violation, the cost of correction so far outweighs any public benefit to be gained, that it would be inequitable to require the violation to be corrected.

II. In lieu of the findings required by the board under subparagraphs I(a) and (b), the owner may demonstrate to the satisfaction of the board that the violation has existed for 10 years

3

or more, and that no enforcement action, including written notice of violation, has been commenced against the violation during that time by the municipality or any person directly affected.

RSA 674:33-a, I-II.

"Our review in zoning cases is limited." Harrington v. Town of Warner, 152 N.H. 74, 77 (2005). "The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the trial court." Id. "The factual findings of the ZBA are deemed prima facie lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it, that the ZBA's decision is unreasonable." Id.; see RSA 677:6 (2016). The trial court's review "is not to determine whether it agrees with the zoning board of adjustment's findings, but to determine whether there is evidence upon which they could have been reasonably based." Lone Pine Hunters' Club v. Town of Hollis, 149 N.H. 668, 670 (2003) (quotation omitted). The trial court reviews the ZBA's statutory interpretation de novo. See RSA 677:6; Golf Course Investors of NH v. Town of Jaffrey, 161 N.H. 675, 682 (2011) (reviewing issues of law decided by the ZBA de novo).

"We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous." Harrington, 152 N.H. at 77. "[W]e are mindful that we do not act as a super zoning board." Id. at 82. "We review the trial court's statutory interpretation de novo." Olson v. Town of Grafton, 168 N.H. 563, 566 (2016).

The Dietzes first argue that the trial court erred because RSA 674:33-a requires that the ZBA make written factual findings as to each element of the statute, and that here the ZBA failed to do so. The Dietzes focus on the language of Paragraph I of the statute, which provides that "the zoning board of adjustment shall, upon application by and with the burden of proof on the property owner, grant an equitable waiver from the requirement, if and only if the board makes all of the following findings." RSA 674:33-a, I (emphasis added). They contend that the trial court erred when it determined that the ZBA's grant of the equitable waivers "amounted to an implicit finding by the ZBA that all of the statutory requirements for an equitable waiver had been met." (Quotation omitted). Sawyer Point counters that, although the statute requires the ZBA to make certain findings, it does not require the ZBA to set forth the findings in writing.

Resolving the issue of whether the ZBA was required to make written factual findings requires that we engage in statutory interpretation. "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." Petition of Carrier, 165 N.H. 719, 721 (2013). "We first look to the

4

language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." Garand v. Town of Exeter, 159 N.H. 136, 141 (2009) (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Carrier, 165 N.H. at 721. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id. "We will not construe a statute in a way that would render it a virtual nullity." Wolfgram v. N.H. Dep't of Safety, 169 N.H. 32, 36 (2016) (quotation omitted).

We have not yet had occasion to interpret RSA 674:33-a, the equitable waiver statute. At the outset, we observe that we generally assume that a fact-finder makes all of the necessary factual findings to support its conclusion. See, e.g., Smith v. Lillian V. Donahue Trust, 157 N.H. 502, 508 (2008) ("Although the trial court did not expressly make this finding, we assume it made all subsidiary findings necessary to support its decision."). Moreover, we have held that a ZBA is not required to make written factual findings when granting a variance under RSA 674:33 (2016) (amended 2018). See Pappas v. City of Manchester Zoning Bd., 117 N.H. 622, 625 (1977) (stating that "[t]he board's decision amounted to an implicit finding that the several requisites for a variance had been met," and holding that "[a]lthough disclosure of specific findings of fact by a board of adjustment may often facilitate judicial review, the absence of findings, at least where there is no request therefor, is not in and of itself error"); Kalil v. Town of Dummer Zoning Bd. of Adjustment, 155 N.H. 307, 310 (2007) ("To the extent this ruling means the superior court reversed the ZBA's decision because it found the decision lacked findings, the ruling constitutes error."); Thomas v. Town of Hooksett, 153 N.H. 717, 724 (2006). The Dietzes assert that these variance cases are inapposite because the language "if and only if the board makes all of the following findings" is present in RSA 674:33-a, the equitable waiver statute, but is not present in RSA 674:33, the variance statute. The Dietzes argue that the legislature intended to require the ZBA to make written findings before granting equitable waivers, but not before granting variances. We disagree.

Both statutes employ a similar construction: if certain enumerated conditions are met, then the ZBA is empowered to grant the requested relief. The variance statute provides that a zoning board of adjustment has the power to grant "a variance from the terms of the zoning ordinance if" the five elements for a variance are satisfied. RSA 674:33, I(b). Similarly, the equitable waiver statute provides that the ZBA shall grant a waiver if the four enumerated

conditions are met.  RSA 674:33-a, I.  The equitable waiver statute, unlike the variance statute, contains the additional requirement that a waiver can be issued "if and only if the board makes all of the following findings."  Id.  Notably, however, this language requires only that the ZBA make findings, not that it must set forth those findings in writing.

We find Property Portfolio Group, LLC v. Town of Derry, 163 N.H. 754 (2012), instructive.  The petitioners in Property Portfolio Group argued that the planning board erroneously granted a waiver of the town's site plan regulations because the board failed to make findings on the record as required by RSA 674:44, III(e) (2016).  Property Portfolio Group, 163 N.H. at 757.  The statutory provision at issue provided that "[t]he basis for any waiver granted by the planning board shall be recorded in the minutes of the board," and that the board "may only grant a waiver if the board finds, by majority vote, that" one of two enumerated elements had been met.  RSA 674:44, III(e).  In interpreting that language, we observed that nothing in RSA 674:44, III(e) obligated the board to make express findings of fact; rather, the board simply needed to set forth "the basis" for its decision in the minutes.  Property Portfolio Group, 163 N.H. at 758-59.  We explained that, "[w]here the legislature intends that specific findings be made, it has, in other contexts, said so expressly."  Id. at 758 (citing statutes).  Accordingly, we declined to "read into RSA 674:44, III(e) a requirement, which the legislature itself did not see fit to include, that the planning board make express findings of fact."  Id. at 758-59.

The same reasoning supports our conclusion here in regard to the ZBA and equitable waivers.  If the legislature intended to require the ZBA to make written findings as a prerequisite to the granting of an equitable waiver it would have said so expressly.  It has often required written findings in other contexts.  See, e.g., RSA 458-C:4, IV (2016) (requiring a judicial officer to "enter a written finding or a specific finding on the record" when deviating from child support guidelines); RSA 674:23, IV (2016) (requiring that any ordinance establishing a temporary moratorium or limitation on issuing building permits or approving subdivision or site plans must be based on the planning board's written findings).  We will not add language that the legislature did not see fit to include.  Carrier, 165 N.H. at 721.  Moreover, we note that RSA 674:33-a, I, unlike the statute at issue in Property Portfolio Group, does not require that the board set forth "the basis" for its decision in the minutes; it simply requires that the board make findings.  Compare RSA 674:44, III(e) with RSA 674:33-a, I.

Accordingly, we agree with the trial court that the ZBA was not required to make a written finding as to each requirement set forth in RSA 674:33-a, I.  Moreover, we observe, as did the trial court, that the minutes of the meeting reflect that the board discussed and analyzed the four equitable waiver requirements.  The trial court found that the board's decision to grant the waivers amounted to an implicit finding that all of the statutory requirements had been met.

The Dietzes next argue that the trial court erred when it ignored the language in Paragraph I(d) requiring that the "past construction or investment [was] made in ignorance of the facts constituting the violation." RSA 674:33-a, I(d). The Dietzes assert that, for purposes of Paragraph I(d), Sawyer Point was not "ignoran[t] of the facts" because: (1) Sawyer Point admitted in its answer that it was aware that the 1999 Addition was within the setback; and (2) both the interior floor plan and the building permit application showed the 1999 Addition to be within the setback.

Sawyer Point counters that, as the trial court concluded, the "ignorance of the facts" language in Paragraph I(d) should be disregarded because to give it effect would render Paragraph II's waiver of the ignorance requirements in Paragraphs I(a) and (b) a virtual nullity, and, further, that the legislative intent behind Paragraph I(d) was to create a balancing test. Sawyer Point also argues that, although it knew the 1999 Addition would be built within the setback, it did not know that building on the existing footprint would constitute a violation, as the building inspector had granted the building permit. As Sawyer Point correctly notes, "an error in ordinance interpretation or applicability made by a municipal official" is an excuse under Paragraph I(b). RSA 674:33-a, I(b).

We agree with the trial court that Sawyer Point satisfied the requirements of Paragraph I(d); nonetheless we employ a different analysis to reach our conclusion. See Quinlan v. City of Dover, 136 N.H. 226, 230 (1992) (sustaining the decision of the trial court on valid alternative grounds). The language of Paragraph I(d) must be read in the context of the overall statutory scheme and not in isolation. Dembiec v. Town of Holderness, 167 N.H. 130, 135 (2014). Paragraph I(b) requires an applicant to show either a good faith error in measurement or calculation, or "an error in ordinance interpretation or applicability made by a municipal official" when issuing a permit. RSA 674:33-a, I(b). If we were to adopt the interpretation of Paragraph I(d) advanced by the Dietzes — that an applicant must always be ignorant of the underlying facts — then there would never be a situation in which an applicant would be eligible for a waiver based on an error made by a municipal official without the applicant also having erred in measurement or calculation.

We will not construe Paragraph I(d) in such a way as to render the municipal error element of Paragraph I(b) a virtual nullity. See Wolfgram, 169 N.H. at 36 (observing further that we seek to effectuate a statute's evident purpose and avoid an absurd result). Therefore, our interpretation of Paragraph I(d) must be broad enough to encompass the situation in which an applicant relied on the misinterpretation of an ordinance by a municipal official in issuing a permit within that official's scope of authority. Moreover, we must give effect to every word of a statute whenever possible. See Garand, 159 N.H. at 141. Paragraph I(d) does not require simply that the applicant be "ignoran[t]

7

of the facts," it requires that the applicant be "ignoran[t] of the facts constituting the violation."  RSA 674:33-a, I(d) (emphasis added).

Here, Sawyer Point applied for a building permit for the 1999 Addition, which was granted by the Town.  The building inspector reviewed and approved Sawyer Point's application, noting that there would be no change in the existing footprint.  Neither Sawyer Point nor the Town interpreted the zoning ordinance such that building a second floor on the existing footprint would run afoul of the setback requirement.  It was not until fifteen years later, when the Dietzes brought their 2014 zoning enforcement action, that the Town's interpretation of the ordinance was challenged.  We have not been asked to decide whether the 1999 Addition constituted a violation of the ordinance.  Nonetheless, by applying for an equitable waiver, Sawyer Point has proceeded as though the 1999 Addition violated the ordinance.  Therefore, we assume, without deciding, that it is a violation.  Although it is undisputed that Sawyer Point was aware that the 1999 Addition would be built within the setback, we conclude that, due to its reliance on "an error in ordinance interpretation or applicability made by a municipal official in the process of issuing a permit over which that official had authority," RSA 674:33-a, I(b), Sawyer Point was "ignoran[t] of the facts constituting the violation."  RSA 674:33-a, I(d) (emphasis added).  Therefore, we hold that Paragraph I(d) is satisfied.  Indeed, given these facts, to hold otherwise would produce an unjust result.  See Carrier, 165 N.H. at 721 (observing that, when construing statutes, we avoid producing an absurd or unjust result).

Although, due to the operation of Paragraph II, Paragraph I(b) does not apply to the 1999 Addition because the violation is more than ten years old, our interpretation of Paragraph I(d) must be broad enough to encompass situations involving municipal error as described in Paragraph I(b).  It would be illogical and unjust if it were harder to secure an equitable waiver for violations more than ten years old than for more recent violations.

To the extent that the Dietzes also argue that the requirements of RSA 674:33-a, I(d) were not satisfied in regard to the 2008 Addition, we decline to address that argument because it is not fully developed.  See State v. Blackmer, 149 N.H. 47, 49 (2003) (confining our review to only those issues that have been fully briefed).

The Dietzes next argue that the trial court erred and impermissibly shifted the burden of proof onto them when, in analyzing whether Sawyer Point was aware of the location of the setback line, it stated that "the ZBA heard no evidence that Sawyer Point or Braun believed the interior floor plan and 1999 sketch . . . accurately depicted the front setback."  The Dietzes contend that the trial court's analysis runs counter to the equitable waiver statute, which places the burden on the property owner to establish at the ZBA that each of the elements for a waiver has been satisfied.  See RSA 674:33-a, I.  We are not

8

persuaded, primarily because we disagree with the Dietzes' interpretation of the trial court order. See Edwards v. RAL Auto. Group, 156 N.H. 700, 705 (2008) (observing that the interpretation of a trial court order presents a question of law for us to decide).

We read the trial court's order as positing that, had certain evidence been presented to the ZBA, the ZBA might have changed its analysis and conclusions. Pursuant to RSA 674:33-a, I, Sawyer Point had the burden of proof at the ZBA to show that its application met the statutory requirements for an equitable waiver. However, once the ZBA granted the waivers and the Dietzes appealed to the trial court, the burden of proof shifted to the Dietzes to show that the ZBA made an error of law, or that its decision was unreasonable. Harrington, 152 N.H. at 77. Here, based on the record before it, and absent such additional evidence, the trial court found that the ZBA's decision was not unreasonable. We find no error.

The Dietzes next argue that the trial court erred in its application of the balancing test set forth in RSA 674:33-a, I(d). Paragraph I(d) provides that the ZBA may grant an equitable waiver if it finds that "the cost of correction so far outweighs any public benefit to be gained, that it would be inequitable to require the violation to be corrected." RSA 674:33-a, I(d). Specifically, the Dietzes argue that the equitable waivers should not have been granted because Sawyer Point presented no evidence to show the cost of correcting the zoning violations at issue. Sawyer Point counters that the members of the ZBA were entitled to use their own knowledge to conclude that the cost of correcting the zoning violations would, in this case, be substantial. We agree with Sawyer Point.

The ZBA's factual findings are deemed prima facie lawful and reasonable, and "will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it, that the ZBA's decision is unreasonable." Harrington, 152 N.H. at 77. Here, we conclude that the Dietzes have not established that the trial court erred when it sustained the ZBA's findings.

We have previously held that ZBA members may base their conclusions upon "their own knowledge, experience and observations." Biggs v. Town of Sandwich, 124 N.H. 421, 427 (1984). Here, the ZBA members could properly use their own knowledge and experience — as well as their common sense — to conclude, as they did, that the cost of tearing down portions of the 1999 and 2008 Additions would "far outweigh[] any public benefit." Moreover, it was not unreasonable for both the ZBA and the trial court to credit the representations made by Sawyer Point's attorney that "the cost would be prohibitive to remove the back of the house."

9

In the alternative, the Dietzes argue that, for purposes of Paragraph I(d), the "cost of correction" should not be the cost of tearing down the additions, but rather the de minimis cost of applying to the Town for a variance. We disagree. There is nothing in the language of the statute to lend support to the position that obtaining a variance would somehow "correct" the violation. Indeed, a variance, rather than "correcting" a zoning violation, simply allows that violation to continue. See 3 Arden H. Rathkopf et al., Rathkopf's The Law of Zoning and Planning § 58:1, at 58-2 (2012) ("A variance is the right to use or to build on land in a way prohibited by strict application of a zoning ordinance. It is permission given to a property owner to depart from the applicable zoning requirements . . . ."). Accordingly, because a variance would not "correct" the zoning violation, it cannot be the case that the cost of applying for a variance would be the appropriate "cost of correction" for purposes of Paragraph I(d). Finally, the Dietzes' proferred interpretation of RSA 674:33-a, I(d) would, in effect, make it impossible for an applicant to obtain an equitable waiver if the applicant had not already applied for a variance — and been turned down. Had the legislature intended to make applying for a variance — and having the request denied — a prerequisite for securing an equitable waiver, it could easily have said so. It did not, and we decline to do so in its stead. See Carrier, 165 N.H. at 721 (observing that we will not add language to a statute that the legislature did not see fit to include).

The Dietzes also argue that the trial court erred in sustaining the ZBA's decision with respect to the "public benefit to be gained" by correction of the violation. The Dietzes contend that the ZBA failed to consider the cumulative effect of the failure to enforce the lakefront setback throughout the Town, rather than just the impact of the specific violations at issue in this case. The Dietzes rely on Bacon v. Town of Enfield, 150 N.H. 468 (2004), as support for this proposition. Their reliance is misplaced. In Bacon, we addressed the concept of cumulative effect in the context of the statutory requirement that an applicant establish that granting a variance is "consistent with the spirit of the [zoning] ordinance." Bacon, 150 N.H. at 471-73. The same statutory requirement is not present in the equitable waiver statute. Compare RSA 674:33, I(b)(2) with RSA 674:33-a.

Nor are we persuaded that the "cumulative impact" rationale endorsed by the lead opinion in Bacon should be extended to the equitable waiver context. The Dietzes argue that the mandate in Paragraph I(d) to weigh "any public benefit to be gained," RSA 674:33-a, I(d) (emphasis added), compels us to consider the cumulative impact of zoning violations in the equitable waiver context. We disagree. Paragraph I(d) provides: "That due to the degree of past construction or investment made in ignorance of the facts constituting the violation, the cost of correction so far outweighs any public benefit to be gained, that it would be inequitable to require the violation to be corrected." RSA 674:33-a, I(d) (emphasis added). When read in its entirety, and within the

10

context of RSA 674:33-a as a whole, Paragraph I(d) is clear that the scope of the cost-benefit analysis is properly limited to the specific zoning violation at issue.

Accordingly, the trial court did not err when it sustained the ZBA and declined to weigh the cumulative effect of building within the lakefront setback throughout the Town. Moreover, relying on the evidence before it, the trial court agreed with the ZBA that there was little or no public benefit to be gained by correcting the violations. Because the Dietzes have failed to show that this finding was unreasonable or unsupported by the evidence, we uphold the trial court's decision. See Harrington, 152 N.H. at 77.

Finally, the Dietzes argue that, because the improvements on Sawyer Point's property, including the house and additions, allegedly exceed the maximum lot coverage standards in the zoning district, the ZBA erred when it granted the equitable waivers. However, purported lot coverage violations were not germane to the equitable waiver applications that are under appeal; therefore, the Dietzes' allegations regarding lot coverage are not properly before this court. Moreover, even if we were to assume that Sawyer Point's improvements exceeded the maximum lot coverage standards, there is nothing in RSA 674:33-a that prohibits a property owner from seeking partial relief from the Town's zoning ordinance, nor have we been presented with any authority supporting the proposition that partial relief would be void.

Because the additional issues raised in the Dietzes' notice of appeal were not briefed, they are deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

11