# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0346, <u>State of New Hampshire v. Cleve Brown</u>, the court on September 30, 2020, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Cleve Brown, was convicted, following a jury trial in Superior Court (<u>Delker</u>, J.), on seven charges of aggravated felonious sexual assault for having engaged in patterns of sexual assault with a minor, and one charge of felonious sexual assault for having engaged in sexual contact with a minor under the age of thirteen. <u>See</u> RSA 632-A:2, III, :3, III (2016). He argues that the trial court erred by allowing the State to introduce evidence of a prior disclosure of the assaults by the victim allegedly in violation of a pretrial ruling, and by denying his resulting request for a mistrial. We affirm.

Evidence that a sexual assault victim previously disclosed the assault to others may be admissible to contradict inferences from the victim's delay in reporting the assault to law enforcement. <u>State v. Woodard</u>, 146 N.H. 221, 226 (2001). We review the trial court's evidentiary rulings and rulings on mistrial requests for unsustainable exercises of discretion. <u>See</u> <u>State v. Turcotte</u>, 173 N.H. ___, ___ (decided July 1, 2020) (slip op. at 2); <u>State v. Colbath</u>, 171 N.H. 626, 632 (2019). To establish an unsustainable exercise of discretion, the defendant must demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of his case. <u>See</u> <u>Colbath</u>, 171 N.H. at 632.

The indictments in this case charged the defendant with assaults occurring between 1995 and 2002, prior to the victim's thirteenth birthday. The victim reported the assaults to law enforcement in 2017. Prior to trial, the State produced two internal memoranda from a representative of the county attorney's office. One memorandum, dated May 17, 2018, reported that the victim had "told [the writer] that she was recently speaking to her childhood friend, [D.D.], and told [D.D.] that she was involved in a case against the defendant. [D.D.] then said she remembered [the victim] telling her about stuff that had happened with the defendant." The memorandum further stated that the victim "told [the writer] that she doesn't specifically remember telling [D.D.] but knows she told some friends," including a friend who is now deceased, and that the victim, D.D., and the deceased friend "were part of the same 'clique' growing up." In the second memorandum, dated May 25, 2018, the same writer noted that "[a]fter we ended our meeting today, [the victim] returned after a couple of minutes and told [the writer] she forgot to say something in

response to a question she was asked. She then told me that she forgot to tell [an investigator] that she had told [D.D.] something about the abuse by" the defendant. The State timely disclosed D.D. as a witness.

On March 2, 2019, after a final pretrial conference, the defendant received what he characterized as "a very detailed statement from the office of the county attorney" concerning two interviews that the State had conducted of D.D. (witness statement). According to the defendant, the witness statement contained a "far more lengthy statement [of D.D.] . . . recalling a significant number of alleged specific accusations mad[e] by" the victim. We note that the witness statement is not part of the record on appeal.

At a pretrial motions hearing, the defendant requested that D.D.'s testimony be excluded, arguing that "[t]he statements and the allegations alleged [in the witness statement] go directly to the heart of our Defense and the Defense that we developed prior to the final pre-trial and our decision to go to trial in this particular case," and that it was "patently unfair to allow [D.D.] to testify in terms of" the witness statement. The State countered that D.D. had "always been on the State's witness list," that the defendant "ha[d] been aware of [D.D.] as a potential witness in this case since day one," and that it had timely disclosed the May 17 and May 25, 2018 memoranda. With respect to the witness statement, the State asserted that D.D. "gave just the details, specifically, about what [the victim had] said," and that it did not anticipate eliciting testimony concerning such details because it would constitute hearsay. When the trial court then asked what testimony the State anticipated that D.D. would provide, the State responded that D.D. would testify "[j]ust that she had a conversation with [the victim], as a child, where they had discussed something with regard to the Defendant and that [the victim] was very upset at that time," and that D.D. would not "get[] into the details" "unless something changes with regard to consistent statements."

After reviewing the witness statement and the May 17 and 25, 2018 memoranda, the trial court observed:

> I think it would be a different story if the State sought to elicit the details of the [witness statement], but given the context of the earlier reports, I think that it sufficiently put the Defense on notice that [D.D.] had or made – at least, have had more information about this incident.
>
> And so I think so long as it's limited to the generalities of the disclosure, the Defense is not prejudiced.

Defense counsel then asked whether "the fact that they talked about [the defendant] and stuff is admissible." When the trial court answered affirmatively, defense counsel asserted that allowing D.D. to testify only that

"we talked about stuff" would "invite the jury to speculate as to what this stuff was," and would not be relevant. The trial court responded,

> Well, except for the sentence that immediately precedes it, which says that they discussed the case that [the victim] was involved in a case against the Defendant. And that puts into context the stuff. I mean, it's clear they had a conversation. I assume this is the only case that [the victim] has . . . involving the Defendant. And the fact that they're talking about this case involving allegations, I think that – and that coupled with the later report from May 25th, which specifically says that [the victim] told [D.D.], it says, something about the abuse by [the defendant].
>
> Those two reports together provide the Defense notice that there was a disclosure to [D.D.] that could have been investigated. So I think it is relevant. So I think the "stuff" she can explain means these allegations or some parts –
>
> . . . .
>
> – or that allegations against the Defendant – I think that without getting into the details that she has here about sitting on the edge of the bed, and touching her calf, and moving up her thigh – I mean, those kind of specific details, the State is not seeking to elicit. And those were not provided in the original report . . . .

At that point, the defendant's counsel continued to argue that the trial court's ruling would invite the jury to speculate as to what the "stuff" was that the victim disclosed. The defendant's counsel observed:

> These are specific accusations against the Defendant. And so if we're stuck with "stuff," then do we know it was the same stuff? For example, in the [witness statement], we have touching a calf and a leg. That's not a criminal act. So if that's what was discussed, if that was all that was discussed, then it could be, like, okay, so you talked about [the defendant] touched your calf or your thigh. Those would not rise to the level of criminal offenses.
>
> So I, again, have a real problem with just letting the jury speculate as to "we talked about stuff involving [the defendant]," that's somehow associated with this case . . . .

3

. . . And so if [D.D.] is the witness, then it just becomes hugely problematic in terms of parsing a cross-examination.

What stuff?  Oh, I can't you ask what stuff.  Well, I don't want to ask you what stuff.  Well, actually, I'd like to ask you some stuff because some stuff isn't what is referenced in the charged indictments.  So I think we still have a problem if we're limiting it to "stuff," which is what we had prior to the final pre-trial.  I don't know that we can limit it to just "stuff."

The trial court responded:

Well, it is, in fairness, not limited to just stuff, because [the victim] says that she told [D.D.] something about the abuse by [the defendant]. So it's more than just stuff.

So I think whether you get into what the details are or not in the cross-examination of [D.D.], to highlight that those differed – those disclosures differed from the disclosures she brought here at trial as a strategic decision to be made.  But I do think that there was a contemporaneous disclosure is relevant.  And so I'm going to allow it in.

We note that the defendant does not challenge the trial court's pretrial ruling on appeal.  From the foregoing discussion of the issue, we interpret the trial court's ruling as allowing D.D. to testify, consistent with the May 17 and 25, 2018 memoranda, that the victim generally disclosed to D.D., when they were "growing up," the defendant's "abuse" of her at issue in this case.  D.D. would not be permitted to testify, however, as to the details of the disclosure reflected in the witness statement.

At trial, the State asked the victim whether she had ever told "anyone about what was happening while it was still happening."  The victim responded, without objection, that at a sleepover with D.D. when she was nine or ten years old, after D.D. had disclosed that she had been "abused when she was little," the victim "talked . . . about it," but "not in detail."

Thereafter, D.D. testified that when she was eleven, twelve, or thirteen, she had a conversation with the victim about the defendant.  When the State asked how that conversation came about, she began to answer, "Well, when I was younger, I was abused, so we were exchanging –."  The defendant objected, arguing, "One of the things that we've already agreed upon is that she was going to tell her nothing more than we talked, at least about stuff.  Prefacing it with, I was abused, says, oh, yes, we were talking about her being abused by [the defendant]. That's well beyond 'stuff.'"  The trial court disagreed, stating

4

that "the context of it was more than just stuff . . . in the disclosures." D.D. then testified that, during the conversation, the victim "disclose[d] that she'd been assaulted by" the defendant. The defendant objected, again arguing that such testimony was "way beyond . . . 'stuff.' We had this argument at the bench, Your Honor." The trial court overruled the objection, reasoning: "I know we had this conversation, but I was very specific that it wasn't just 'stuff.' That was the first disclosure, but it was clear from the overall context what the content – the general content of the conversation was." The defendant then moved for a mistrial, arguing that the testimony the trial court had allowed created an "elephant in the room that cannot be removed," and that his "due process right to a fair trial" had been denied. The trial court denied the mistrial motion, observing that "this testimony is within the boundaries of what I previously ruled to be admissible."

The State's examination of D.D. then continued:

> Q [D.D.], I'll ask that question again. During that conversation, did [the victim] disclose to you that she'd been sexually assaulted by the defendant?
> A Yes.
> Q Did she give you a lot of details during that?
> [Defense counsel]: Judge, may I approach?
> . . .
> THE COURT: Sustained.
> A Yeah.
> THE COURT: That objection's sustained.
> [Defense counsel]: Well, I'd – I'm going to also ask that –
> THE COURT: Yeah. So ladies and gentlemen, the witness' last answer is stricken – I mean, the question and answer is.

After D.D.'s testimony concluded, the defendant renewed his motion for a mistrial "based on the Prosecutor's using the phrase 'sexual assault.'" The defendant argued that, although he understood that the trial court had "struck [that testimony] from the record," the testimony "was clearly beyond what the Court anticipated that this witness would be able [to] be asked or to testify to during this exchange." In denying the motion, the trial court explained that

> that actually wasn't what I struck from the record. . . . I mean, we hashed this out . . . previously, in the motions in limine hearing. From the context of discovery, I think, is sufficiently clear. They did have a conversation about sexual assault, and I allowed that testimony. It was the fact that she testified that there were additional details, that, I struck from the record as shouldn't have been asked.

5

On appeal, the defendant argues that the trial court erred by allowing D.D. to testify that the victim disclosed that she had been "assaulted" by the defendant, and by denying his request for a mistrial. The defendant claims that the trial court struck D.D.'s follow-up testimony that the victim disclosed that the defendant had "sexually assaulted" her, and that "it is neither possible nor logically consistent to accept that the use of the word 'assault' was a permissible expansion of 'stuff' but the use of the phrase 'sexually assault[]' was not." According to the defendant, the pretrial ruling allowed the State to ask D.D. only about "her general recollection of have been told about 'stuff'" and "the context of the conversation where the 'stuff' statement was made," but not "the nature of that 'stuff' itself.'" Based upon the pretrial ruling, the defendant contends that he anticipated "that a direct confirmation of a contemporaneous disclosure would not be produced at his trial." By allowing D.D. to testify that the victim had disclosed an "assault," the defendant argues that the trial court "change[d] the nature of its pretrial ruling[] in the middle of trial," thereby causing him substantial prejudice.

The defendant's arguments are premised upon a misunderstanding of the pretrial ruling. The trial court expressly stated at the pretrial motions hearing that D.D.'s testimony concerning the disclosure would not be "limited to just stuff." Rather, as noted above, the trial court made clear that D.D. would be permitted to testify that the disclosure generally concerned the defendant's "abuse" of the victim at issue in this case. It was the specific details of the disclosure reflected in the witness statement that the trial court would not allow the State to introduce. We note that the defendant did not argue at trial, and does not argue on appeal, that the trial court erred because the testimony exceeded the scope of the State's proffer at the pretrial motions hearing.

Contrary to the defendant's claim, the trial court did not strike the testimony, to which the defendant did not object, that the victim had disclosed a "sexual assault." Rather, as the trial court explained, it struck the testimony that the victim had provided "a lot of details during" the disclosure. This is consistent with the pretrial ruling. We conclude that the trial court did not unsustainably exercise its discretion by allowing D.D. to testify that the victim disclosed the defendant's "assault" of her, or by denying the mistrial request.

<u>Affirmed</u>.


HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,<br>Clerk**

6