NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2020-0204

THE STATE OF NEW HAMPSHIRE

v.

ROGER ROY

Argued: October 14, 2021
Opinion Issued: November 16, 2021

John M. Formella, attorney general (Elizabeth Velez, attorney, on the brief, and Weston R. Sager, assistant attorney general, orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Roger Roy, appeals his convictions on one count of felony domestic violence–criminal threatening with a deadly weapon, see RSA 631:2-b, I(e) (2016), and four counts of misdemeanor domestic violence–simple assault, see RSA 631:2-b, I(a) (2016), following a jury trial in Superior Court (Nicolosi, J.). On appeal, the defendant argues that the evidence was insufficient to convict him of felony domestic violence, and that the trial court erred by precluding him from questioning the victim about sexually explicit text messages and by redacting the sexually explicit content from the messages before publishing them to the jury. We affirm.

I.  Sufficiency of the Evidence

When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State.  State v. Saintil-Brown, 172 N.H. 110, 117 (2019).  The trier of fact may draw reasonable inferences from facts proved as well as from facts found as the result of other inferences, provided they can be reasonably drawn.  Id.  We examine each evidentiary item in the context of all the evidence, and not in isolation.  Id.  Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo.  Id.

To convict the defendant on the felony domestic violence charge, the jury was instructed that it had to find, beyond a reasonable doubt, that: (1) he "threatened to use a deadly weapon against another"; (2) when he made the threat, "he did so with the purpose to terrorize the other person"; and (3) he and the other person were "intimate partners."  See RSA 631:2-b, I(e).  The trial court informed the jury that a "deadly weapon includes a firearm."  See RSA 631:2-b, II (2016) (providing that domestic violence is a misdemeanor unless "the person uses or threatens to use a deadly weapon as defined in RSA 625:11, V, in the commission of an offense, in which case it is a class B felony"); RSA 625:11, V (2016) (defining "deadly weapon").

On appeal, the defendant argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he threatened to use a deadly weapon against the victim.  Although he acknowledges that a threat can be implicit, the defendant contends that the evidence "was simply too equivocal to constitute proof, beyond a reasonable doubt, that [he] threatened to use a deadly weapon."  We disagree.

The evidence and all reasonable inferences, viewed in the light most favorable to the State, are as follows.  The defendant and the victim began a romantic relationship in late 2018, which ended in the spring of 2019.  On or about July 13, 2019, the defendant contacted the victim to apologize for his prior conduct.  That day, the victim picked up the defendant and his friend at a local gas station and took them to the apartment in which she was staying.  Later that evening, the victim and the defendant drove his friend home, returned to the victim's apartment, and had consensual sex.

The next morning, the defendant became angry when the victim answered a call from a friend.  That evening in the victim's bedroom, they began to argue about the phone call, and the defendant punched and slapped the victim's face and spat on her.  At one point, after the defendant had

2

"slammed [the victim] on the ground," the victim's roommate knocked on the victim's bedroom door. The defendant told the victim that if she opened the door, he would kill her.

The next day, the victim's mother arrived at the victim's apartment to retrieve the victim's electronic benefits card. She knocked on the victim's bedroom door for several minutes, but the victim did not open the door. The defendant held his hand over the victim's mouth and told her to be quiet and not to open the door. The victim, feeling frightened, opened the door just wide enough to stick her hand out, tossed the card, and closed the door. When she stood up as if to leave, the defendant shoved her back down and punched her. He told her that he would kill her if she tried to get out of the room or if she screamed or yelled.

The victim knew that the defendant "used to always carry a gun on him," though she never saw it during this encounter. Even though she did not see a gun, the victim believed that the defendant had one on him because "he kept acting like he had one" by "grabbing his . . . waistband . . . every time . . . [she] tried to get up." At some point during the encounter, he told her that he had a gun.

We hold that this evidence was sufficient to prove, beyond a reasonable doubt, that the defendant threatened to use a deadly weapon (here, a gun) against the victim. From this evidence, the jury could reasonably infer that, although the victim never saw a gun, the defendant had one on his person. The victim testified that the defendant "used to always carry a gun" with him and that he acted as if he had one by grabbing his waistband whenever she tried to get up. She also testified that the defendant told her that he had a gun. From the evidence, the jury could also reasonably infer that when the defendant threatened to kill the victim, he intended to do so by using the gun he admitted to having with him, and that she knew he "used to always" carry on him. Accordingly, the evidence and all reasonable inferences therefrom viewed in the light most favorable to the State, were sufficient to establish, beyond a reasonable doubt, that the defendant impliedly threatened to use a gun against the victim.

The defendant contends that the evidence was insufficient to convict him on the felony domestic violence charge because there was no evidence that he actually used a deadly weapon to threaten the victim. He asserts that, without such evidence, he could not have been convicted of felony criminal threatening with a deadly weapon, see RSA 631:4, I(d), II(a)(2) (2016), and reasons that, because the legislature intended that crime to be identical to the domestic violence version of the crime, see RSA 631:2-b, I(e), II, he also could not be convicted of felony domestic violence-criminal threatening with a deadly weapon. The defendant asserts that the State is "legislatively estopped" from

3

arguing otherwise because, when the legislation that created RSA 631:2-b was proposed, the Executive Branch represented to the legislature that the bill would not create any new crime. He also argues that because RSA 631:2-b, I(c) and II(a)(2) are ambiguous, we must use legislative history to construe them and apply the rule of lenity.

Addressing the defendant's arguments requires that we interpret the pertinent statutes. The interpretation of a statute raises a question of law, which we review de novo. See State v. Pinault, 168 N.H. 28, 31 (2015). We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. Id.; see RSA 625:3 (2016). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Pinault, 168 N.H. at 31. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. Only when the statutory language is ambiguous do we look to legislative history to aid in our interpretation. State v. Eldridge, 173 N.H. 61, 67 (2020).

The legislature used different language for felony domestic violence-criminal threatening with a deadly weapon than it used for felony criminal threatening with a deadly weapon. A person is guilty of felony domestic violence-criminal threatening with a deadly weapon if he or she "[t]hreatens to use a deadly weapon against" a family or household member or intimate partner "for the purpose to terrorize that person." RSA 631:2-b, I(e); see RSA 631:2-b, II (providing that "[d]omestic violence is a class A misdemeanor unless the person uses or threatens to use a deadly weapon . . . in the commission of an offense, in which case it is a class B felony"). By contrast, a person is guilty of felony criminal threatening with a deadly weapon when he or she "threatens to commit any crime against the person of another with a purpose to terrorize any person," RSA 631:4, I(d), and the person "[u]ses a deadly weapon," RSA 631:4, II(a)(2) (providing that criminal threatening is a class B felony if the person "[u]ses a deadly weapon . . . in the violation of the provisions of subparagraph I(a), I(b), I(c), or I(d)").

When "the legislature uses different language in related statutes, we assume that the legislature intended something different." State v. Bobola, 168 N.H. 771, 777 (2016) (quotation omitted). According to the plain language of the pertinent statutes, felony domestic violence-criminal threatening with a deadly weapon requires only a threat to use a deadly weapon, whereas felony criminal threatening with a deadly weapon requires actual use of a deadly weapon.

We will not use legislative history to vary the plain meaning of these statutes. See Welsh v. W.J. Dillner Transfer Co., 91 F. Supp. 685, 688 (W.D.

4

Pa. 1950) (When statutory language is "plain and concise and the meaning is clear," a court should not vary that meaning "by resort to reports of [legislative] committees or other familiar aids to statutory construction."). Moreover, we decline the defendant's invitation to adopt a "legislative estoppel" doctrine. Because we conclude that the statutes at issue are plain and unambiguous, the rule of lenity does not apply. See State v. Lukas, 164 N.H. 693, 696 (2013). Accordingly, we reject the defendant's assertion that he could not be convicted on the felony domestic violence charge unless the State proved, beyond a reasonable doubt, that he actually used a deadly weapon to threaten the victim.

## II. Admissibility of Sexually Explicit Text Messages

We turn next to the defendant's assertion that the trial court erred when it precluded him from questioning the victim about sexually explicit text messages and when it redacted the sexually explicit content from them before publishing them to the jury. The day before the jury trial began, the State filed a motion to exclude text messages between the defendant and the victim on the ground that they were irrelevant and that their probative value was substantially outweighed by the danger of unfair prejudice. Some of the text messages contained sexually explicit content. The trial court ruled that the sexual banter between the defendant and the victim was not relevant and was cumulative of other evidence that the victim was "interest[ed] [in] get[ting] back in touch with him" and had had consensual sex with him on the first night of the encounter. The court further ruled that the probative value of the sexually explicit content was "outweighed by the prejudice." The court explained, "I think it's embarrassing. I think it's mutual sexual banter. I think it doesn't add to the case. I think they had a sexual relationship before. She had sex with him that night."

However, the court allowed defense counsel to question the victim about the non-sexual content of the text messages to impeach her testimony. The court also permitted defense counsel to introduce a sexually provocative photograph and a screenshot of a sexually provocative video that the victim had texted to the defendant. In addition, the court published the text messages, with the sexually explicit portions redacted, to the jury. The court instructed the jury that it could use the redacted text messages only to assess the victim's credibility.

We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard. State v. Colbath, 171 N.H. 626, 632 (2019). "For the defendant to prevail under this standard, he must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case." Id. (quotation omitted). "In applying our unsustainable exercise of discretion standard of review, we

5

determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." Id. (quotation omitted). "Our task is not to determine whether we would have found differently, but is only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." Id. at 632-33 (quotation omitted).

On appeal, the defendant first argues that the sexually explicit text messages were relevant and probative as prior inconsistent statements. For the purposes of this appeal, we assume without deciding that he is correct.

The defendant next asserts that the probative value of the sexually explicit text messages was not substantially outweighed either by the danger of unfair prejudice or by the danger of needlessly presenting cumulative evidence. New Hampshire Rule of Evidence 403 allows a trial court to "exclude relevant evidence if its probative value is substantially outweighed" by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." N.H. R. Ev. 403.

Here, we conclude that the trial court did not unsustainably exercise its discretion by ruling that the sexually explicit text messages were inadmissible because their probative value was substantially outweighed by the danger of needlessly presenting cumulative evidence. The trial court reasonably determined that the sexually explicit text messages were cumulative of other evidence that, even though their romantic relationship had ended months before, the victim was sexually interested in the defendant in July 2019. Therefore, we uphold the trial court's decision that the sexually explicit text messages were inadmissible.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.