NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2021-0429

THE STATE OF NEW HAMPSHIRE

v.

DAVID J. TUFANO

Argued: October 20, 2022
Opinion Issued: March 30, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, attorney, on the brief and orally), for the State.

Lothstein Guerriero, PLLC, of Concord (Theodore M. Lothstein on the brief and orally), for the defendant.

HICKS, J. The defendant, David J. Tufano, appeals his conviction, following a jury trial in Superior Court (Ruoff, J.), for misdemeanor cruelty to animals. See RSA 644:8, III (Supp. 2018). We reverse and remand.

The jury could have found the following facts. On May 26, 2019, Richard Roberge was working in his yard at his home in Somersworth. He heard a low, loud moaning noise coming from the defendant's home across the street and went over to investigate. He saw the defendant with a hose in his hand

spraying water into a plastic container. Inside the container was a "Havahart Trap" with a cat in it. He told the defendant to take the trap out of the bucket and open the trap, which the defendant did. The cat then ran off.

Roberge did not immediately report the incident to police, but did so later, after other neighbors told him he should. Specifically, after his neighbor Sharon Barry told him about a prior incident in which the defendant had placed a trap on his property, Roberge decided to contact the police.

The defendant was charged with misdemeanor cruelty to animals. Prior to trial, the defendant filed a motion in limine to prohibit, under New Hampshire Rule of Evidence 404(b), the admission of certain statements regarding the defendant's prior trapping of cats. The motion alleged that the day after the May 2019 charged incident, Barry told Roberge that she had previously confronted the defendant "about setting traps in his yard to prevent cats from entering into his garden." That confrontation resulted in the police being called and, according to the State's objection, the associated police report confirms the date of incident as September 4, 2018. The defendant's Rule 404(b) motion requested that the court "prohibit the admission of any of the alleged statements" Barry made regarding the defendant's cat trapping "or any others similar to it from any witness."

The State objected, arguing that the evidence was "relevant to the defendant's intent and plan when he trapped the cat on this occasion as well as his knowledge of the trap used." The Trial Court (Houran, J.) denied the defendant's motion, adopting the State's analysis and conclusions in their entirety. The defendant moved for reconsideration, which the Trial Court (Ruoff, J.) denied.

The defendant also filed a motion in limine to allow him, in relevant part, to impeach Barry with a prior conviction, pursuant to New Hampshire Rule of Evidence 609. The Trial Court (Ruoff, J.) denied the motion.

The defendant was tried by jury in June 2021. He testified at trial, offering an alternative version of the events at issue. In relevant part, he testified that on the day in question, he thought he hit a cat with his vehicle. He stopped and saw the cat lying on the ground not moving. After determining that the cat was breathing, he picked it up and walked to his shed and "look[ed] for a container – something to put it in." He had nothing suitable except the trap, so he put the cat in that.

Once the cat opened its eyes and became alert, the defendant decided to try to feed the cat something, but when he lifted the door of the trap to put in a can of tuna fish, "the cat lunged at [him] and bit [his] hand." The defendant quickly pulled his arm out, cutting his forearm in the process, and the trap's spring-loaded door slammed shut keeping the cat trapped inside.

2

At some point, the defendant decided to put the trap into another container because he was probably going to have to transport the cat to a "veterinary clinic or something that was open." He had already called the humane society, but got neither an answer nor an answering machine. He did not want to put the trap directly on his car seat because the trap was dirty and had sharp edges and also because he was concerned about the cat relieving itself.

After tending to the wound on his arm, the defendant discovered that "the cat was moving around a lot better" and he became "a little more satisfied" that the cat was not injured. At that point, the defendant "started thinking more along just taking it out and letting it go and seeing what it did."

Having already put the trap into the container, however, the defendant then had difficulty getting it out. When he tried to lift the trap out of the container, the container came up with the trap. Because he could not remove the trap by lifting it by its handle, he tried to pull it out with his "fingers going around the side of the trap," but the cat kept swiping at his fingers. The defendant then got a hose and began to spray the cat with water to keep it away from his hand while he tried to "unjam" the trap from the container. He used the hose's "fog pattern so it wouldn't be really hard . . . [and] wouldn't hurt [the cat]."

At this point, Roberge came up behind the defendant and started screaming "what are you doing to that cat?" The defendant tried to explain what he was doing, but Roberge "wouldn't pay any attention to it" and told the defendant to "get that cat out of the tub of water." Roberge and the defendant "went back and forth for a short period of time and [the defendant] was starting to really get irritated." The defendant turned around and kicked the container, which "flipped over on its side," partially dislodging the trap. The defendant pulled the trap the rest of the way out, opened it, and the cat ran out.

The jury convicted the defendant and he now appeals, challenging the denials of his Rule 404(b) and Rule 609 motions in limine. We first address the denial of the defendant's Rule 404(b) motion. We review challenges to the trial court's evidentiary rulings under our unsustainable exercise of discretion standard. See State v. Colbath, 171 N.H. 626, 632 (2019). "For the defendant to prevail under this standard, he must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case." Id. (quotation omitted).

The purpose of Rule 404(b) "is to ensure that an accused is tried on the merits of the crime charged and to prevent a conviction that is based upon propensity and character inferences drawn from evidence of other crimes or wrongs." State v. Thomas, 168 N.H. 589, 599 (2016) (quotation omitted). It provides:

3

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

N.H. R. Ev. 404(b)(1). Evidence of other crimes, wrongs or acts is admissible only if: (1) "it is relevant for a purpose other than proving the person's character or disposition"; (2) "there is clear proof, meaning that there is sufficient evidence to support a finding by the fact-finder that the other crimes, wrongs or acts occurred and that the person committed them"; and (3) "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." N.H. R. Ev. 404(b)(2); see State v. Clark, 174 N.H. 586, 592-93 (2021). "The State bears the burden of demonstrating the admissibility of prior bad acts." Clark, 174 N.H. at 593. Here, the defendant argues that the first and third prongs of the Rule 404(b)(2) test were not met.

To meet the first prong, "the State is required to specify the purpose for which the evidence is offered and articulate the precise chain of reasoning by which the proffered evidence will tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity." Id. (emphasis added) (quotation omitted). The defendant argues that the evidence of prior cat trapping failed this prong "because it was not relevant for a purpose other than to show [his] disposition to trapping cats and had no bearing on any issue actually in dispute."

In its brief, the State argued that the challenged evidence was relevant to show the defendant's intent and knowledge of the trap. At oral argument, however, the State conceded that the defendant's knowledge of the trap was not a disputed issue in the case. Accordingly, the evidence was not admissible for that purpose under Rule 404(b). See id.

We now turn to the asserted purpose of showing the defendant's "intent." The State argued to the trial court that the challenged evidence was relevant to show that the defendant "had the same intent on the earlier occasions of trapping as he did on [the charged] occasion," and that this "consistent intent" was "important to show [his] mental state with regard for how he treated the cat" during the charged incident. Cf. Thomas, 168 N.H. at 601 (concluding that, "for purposes of Rule 404(b), 'intent' can entail any mental state that the proponent of the evidence may seek to prove").

The criminal complaint alleged that the defendant "negligently beat, tortured, or in another manner mistreated an animal, to wit a cat, by trapping the cat, placing the trap in a containe[r], and adding water to said container." Thus, if we assume, without deciding, that "trapping the cat" constituted a

4

material element of the offense charged, the State was required to prove that the defendant acted negligently in trapping the cat. See RSA 626:2, I (2016) ("A person is guilty of . . . a misdemeanor only if he acts purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense."). The State could prove negligence by proving any of the higher mental states of purposely, knowingly, or recklessly. See RSA 626:2, III (2016).

In his motion for reconsideration of the trial court's 404(b) ruling, the defendant admitted that, after "the cat was hit by his car or ran into it," he "placed it in the [Havahart] trap." Thus, the defendant admitted that he acted both knowingly and purposely in trapping the cat[1] as part of the charged incident. See RSA 626:2, II(a), (b) (2016) (defining purposely and knowingly). Accordingly, as with the defendant's knowledge of the trap, his intent in trapping the cat was not an issue actually in dispute in the case and the evidence was therefore not admissible under Rule 404(b) for that purpose. See Clark, 174 N.H. at 593.

Finally, the State argues that "the evidence was relevant to give the jury the context necessary to rebut the defendant's defense" that he acted out of compassion for the cat. Specifically, the State argues that there was a reasonable, non-propensity inference to be drawn "that the defendant's intent in placing the cat in the trap [during the charged incident] was not to take it to the humane society because it was injured, but . . . to remove it from his property" as had been his intent on prior occasions.

We disagree that a "non-propensity inference" can be so drawn. The jury could find that the defendant possessed the same intent as he had on prior occasions only by relying upon the defendant's propensity or disposition to trap cats for the purpose of removing them from his property. Under Rule 404(b), however, "no link in the chain of inferences justifying relevance can be derived

---

[1] Portions of the defendant's motion might be read to assert that his actions did not constitute "trapping," as it states, for instance: "There is no evidence this cat was ever 'trapped' as suggested by the state, other than putting it into the trap for shelter. The term "trapping" however, easily encompasses the act of causing the cat to be confined by placing it in the trap. See Webster's Third New International Dictionary 2431 (unabridged ed. 2002) (defining "trap," in relevant part, as "to place . . . in a restricted . . . position: CONFINE"). More importantly, any such semantic argument posits a distinction without a difference, as it did not matter, for purposes of the charge against the defendant, whether the cat entered the trap of its own accord or was placed into it by the defendant — the gravamen of the offense is that the defendant sprayed the cat with water while it was in a container from which it could not escape. Indeed, that was actually the basis of the argument the defendant was making with the above-quoted sentence, as the sentence immediately preceding it states: "The issue in the case is whether or not [the defendant] had negligently abused the cat by basically spraying water on it while it was in the cage." In other words, whether the defendant "set" the trap for a cat to enter, either previously or on the occasion of the charged incident, was irrelevant to what the State had to prove in order to convict the defendant.

5

from the prior conduct's tendency to show character or disposition." State v. Melcher, 140 N.H. 823, 828 (1996). "When . . . an assumption based upon the defendant's propensity toward certain action is the essential connection in the inferential chain supporting relevance, the evidence is inadmissible under Rule 404(b)." Id. at 830. Accordingly, we conclude that the prior-trapping evidence "is simply evidence of propensity or disposition, prohibited by Rule 404(b), sought to be introduced through the mechanical recitation of 'intent' as the password for admissibility." State v. Hastings, 137 N.H. 601, 606 (1993).

Moreover, "[t]o be relevant to intent, evidence of other bad acts must be able to support a reliable inference, not dependent on the defendant's character or propensity, that the defendant had the same intent on the occasions of the charged and uncharged acts." Colbath, 171 N.H. at 634 (quotation omitted). "We will find sufficient support for a reliable inference of intent only if the defendant's intent in committing the other bad acts and the defendant's intent in the charged offenses are closely connected by logically significant factors." Id. (quotation and brackets omitted). Here, the State neither alleged nor proffered evidence that the prior acts of cat trapping involved mistreatment similar to the primary allegation of mistreatment here; namely, spraying water on a cat confined in a container. Thus, we cannot conclude that the defendant's intent in committing the prior acts of cat trapping and his intent in the charged offense are "closely connected by logically significant factors." Id. (quotation omitted).

Because the State sought to introduce the challenged evidence for purposes either not relevant to an issue actually in dispute or reliant upon prohibited inferences of disposition or propensity, the trial court's denial of the defendant's Rule 404(b) motion in limine was "clearly untenable" under our unsustainable exercise of discretion standard. Id. at 632. We now consider whether the court's ruling prejudiced the defendant's case. Id.

The State contends that the limiting instructions given by the trial court "properly addressed the potential prejudice" and that "this Court presumes that the jury follows the instructions given by the trial court." We conclude, however, that the court's instructions neither eliminated nor mitigated the prejudicial effect of the evidence. The trial court instructed the jury that it could consider evidence of the 2018 cat trapping incident for three limited purposes, one of which was "to kind of explain how the case got reported by Mr. Roberge." Direct examination of Roberge on that issue, however, elicited testimony highly prejudicial to the defendant. Roberge testified that he did not immediately report the defendant's actions because he believed that everybody deserves a second chance. He continued: "But I found out afterwards that he had a history of being hostile towards cats. One of my neighbors had a problem with him trying to trap a cat. So I said, well, I think he's already had his warning. And that's when I went to the police." (Emphasis added.) We conclude that admission of this evidence prejudiced the defendant's case.

6

Accordingly, we conclude that the trial court's denial of the defendant's Rule 404(b) motion in limine constituted an unsustainable exercise of discretion. See id.

The State nevertheless argues that the error was harmless. "To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict." State v. Racette, 175 N.H. 132, 137 (2022). An error may be harmless beyond a reasonable doubt if: "(1) the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight; or (2) the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." Id. (citation omitted). "We review these factors to determine whether an error affected a verdict. Either factor can be a basis supporting a finding of harmless error beyond a reasonable doubt." Id. at 137-38.

The State contends that the other evidence of the defendant's guilt was overwhelming. The State argues:

> Based upon the testimony . . . [at trial], the jury reasonably could have found that the defendant attempted to drown the cat in the Sterilite container while it was in the trap. Based upon the testimony of Roberge . . . and the defendant himself, the jury would have to find, at a minimum that the defendant sprayed the cat with a hose while it was stuck in a trap that the defendant placed inside a plastic container. Both findings clearly constitute mistreatment of the cat and conduct that grossly deviates from what a reasonable person would do in the same situation."

We disagree. While it was undisputed that the defendant sprayed the trapped cat inside a container, we cannot say that those facts alone "clearly constitute mistreatment of the cat that grossly deviates from what a reasonable person would do in the same situation." Beyond those facts, the evidence sharply differed. According to the defendant's testimony, he sprayed the cat lightly to keep the cat from swiping at his fingers while he tried to release it. The defendant also testified that he began spraying the water no more than five or ten seconds before Roberge came over, and, therefore, there was "just a little bit of residual water in the bottom" of the 50-gallon bin containing the trap. Roberge, on the other hand, testified that "the container was full of water" and the defendant was "holding the trap under water, so the cat was pretty close . . . to drowning." While we assume that Roberge's testimony, if believed, could support a finding of "mistreatment of the cat that grossly deviates from what a reasonable person would do in the same situation," we cannot say the same about the defendant's version of events, if believed. Because the erroneously-admitted evidence of prior cat trapping could have influenced the jury to view the defendant as a person who was "hostile toward cats" and likely to abuse or

7

mistreat one, it could have led the jury to credit Roberge's testimony over the defendant's and to convict him of the charged offense. Accordingly, we cannot say the error did not affect the verdict.

The defendant next challenges the denial of his Rule 609 motion in limine to impeach Barry with a prior conviction. Given our ruling on the Rule 404(b) issue, we conclude that we need not address the trial court's Rule 609 ruling. Under our Rule 404(b) ruling, Barry would be precluded from testifying about the 2018 incident and, as the State conceded at oral argument, she testified to none of the facts necessary to prove the State's case. Accordingly, the Rule 609 issue is unlikely to arise on remand. For similar reasons, we need not address the State's harmless error argument that Barry's "testimony was cumulative in relation to the State's evidence of guilt introduced through the testimony of" other witnesses.

Reversed and remanded.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.