Rockingham
No. 90-250

GRANITE STATE MINERALS, INC.

v.

CITY OF PORTSMOUTH

July 8, 1991

*Shaines & McEachern P.A.*, of Portsmouth (*Paul McEachern* on the brief and orally), for the plaintiff.

*Sharon A. Cuddy*, assistant city attorney, of Portsmouth, by brief for the defendant, the City of Portsmouth, and orally for the defendant and intervenors.

*Boynton, Waldron, Doleac, Woodman & Scott P.A.*, of Portsmouth (*Bradley M. Lown* on the brief), by brief for intervenor the National Society of the Colonial Dames of America.

*Devine, Millimet & Branch P.A.*, of Manchester (*Cynthia A. Satter* on the brief), by brief for intervenor Margaret Scott Carter.

*Sanders and McDermott*, of Hampton (*Ann C. Thompson* on the brief), by brief for intervenor Gallant Industries, Inc.

BATCHELDER, J. The plaintiff, Granite State Minerals, Inc. (Granite State) appeals the Superior Court's (*McHugh*, J.) denial of its motion for summary judgment and subsequent dismissal of its appeal of a decision of the Portsmouth Zoning Board of Adjustment (ZBA), which denied the plaintiff's request for variances to add three stories to its existing structure. Granite State argues that it may add the three floors requested without a variance. The defendant, the City of Portsmouth (the City), and the intervenors, in addition to their general opposition to Granite State's argument, cross-appeal, maintaining that Granite State improperly invoked the jurisdiction of the superior court to hear its appeal under RSA 677:4,

because Granite State's appeal was based on material alterations in its original plans, which were not introduced until the rehearing. They argue that Granite State's failure to present its altered plans in a new application violated local administrative regulations. For the reasons that follow, we affirm.

The facts are not in dispute. On December 14, 1988, Granite State submitted a building permit application to construct a three-story addition to its existing structure located in the waterfront industrial zoning district of the city. The proposal included overhanging balconies on the upper floors of the addition. The existing building is nonconforming, because it violates the rear yard setback requirements, the front yard setback requirements, the open space requirements, and the required setback from property used or zoned residentially. After reviewing the plans, the city's building inspector noted on the application that certain variances from the zoning ordinance were required before a permit could be issued.

Upon Granite State's application for variances, a hearing was held before the ZBA on January 31, 1989, and all of Granite State's requests were denied. Subsequent to the initial hearing, the ZBA granted Granite State a rehearing, at which time Granite State argued that the variances in question were not required as a matter of law, because its proposed addition would not vary the "footprint" of the existing structure. At the rehearing on March 28, 1989, Granite State also presented "revised" plans for the addition which, it asserted, restricted the balconies so that they would lie under the overhang of the existing roof. On that date, the variances were again denied.

Granite State subsequently appealed to the superior court pursuant to RSA 677:4. In conjunction with that appeal, Granite State filed a motion for summary judgment on the issue of whether a variance was required. The trial court, ruling on Granite State's motion for summary judgment, denied the motion and dismissed the underlying appeal. It is from this ruling that Granite State now appeals.

■ In reviewing the trial court's order of dismissal, we must determine whether Granite State's pleadings contain facts which are sufficient to state a cause of action upon which relief may be granted. *Kennedy v. Titcomb*, 131 N.H. 399, 401, 553 A.2d 1322, 1323 (1989). We will not overturn the dismissal unless it is unsupported by the evidence or is erroneous as a matter of law. *K & P, Inc. v. Town of Plaistow*, 133 N.H. 283, 289, 575 A.2d 804, 808 (1990).

■ As a threshold issue, we must determine which of the two proposed sets of plans for the addition are now before us for consid-

eration, the original plans with overhanging balconies, or the revised plans without them. Granite State argues that the measurements of the building, at least in a horizontal plane, would remain the same after the completion of the addition; *i.e.*, it seeks review on the revised plans. The ZBA, however, indicated that its decision was made on the original plans, because the rehearing was on the original application. Moreover, the trial court based its ruling on the original plans, correctly noting that certain procedural steps are required before the trial court can involve itself in zoning appeals, and that the revised plans had not been properly submitted. *See* RSA 677:3 (Supp. 1990). The jurisdiction of this court extends to the review of a trial court order, verdict, opinion, or decree on the merits. *See* SUP. CT. RS. 3, 7. We cannot, in the first instance, make factual findings or substitute our judgment for that of the building inspector and ZBA. Although we discuss and rely upon the dispositive issue of whether a variance was required to construct the addition according to the original plans, which included the overhanging balconies, we nevertheless, in the interest of judicial economy, also discuss the outcome we would reach if the substitute plans were properly before us. *See State v. Ramos*, 121 N.H. 863, 867, 435 A.2d 1122, 1124 (1981).

Essentially, Granite State asserts that the proposed expansion does not violate the zoning ordinance because it would not vary the existing "footprint" of the building. Hence, it seeks to apply to the law of zoning the ancient property law maxim that ownership extends from the surface downward to the center of the earth and upward indefinitely to the skies. *Murphy v. Bolger*, 60 Vt. 723, 726, 15 A. 365, 367 (1888). However, modern courts recognize that this common-law right must be balanced with the rights of others, *e.g.*, to flight over the land, *State v. Chippewa Cable Co.*, 48 Wis. 2d 341, 351–52, 180 N.W.2d 714, 720 (1970), and to receive light and air, *Mock v. Shulman*, 226 Cal. App. 2d 263, 269, 38 Cal. Rptr. 39, 43–44 (1964). A balancing of rights is similarly required in this case.

The Portsmouth Zoning Ordinance prohibits the expansion of a nonconforming use. Section 10-401(5) of the ordinance provides, "No increase in the extent of the non-conforming use of a structure or land may be made." Granite State argues that this prohibition on expansion of a nonconforming use does not apply to expansion of a nonconforming structure, when the expansion does not "intensify the particular non-conforming aspects of [the] structure." Although the concepts of nonconforming structure and nonconforming use are distinct and separate notions in the area of land use planning and

zoning, we disagree with Granite State's assertion that this distinction exempts it from the proscription of section 10-401(5).

■ Section 10-102 of the ordinance defines a nonconforming use as "[a] *building, structure* or use of land existing and lawfully occupied at the time of enactment of this Ordinance which does not conform to the regulation of the district in which it is situated." (Emphasis added.) This definition of nonconforming use must be read with the section prohibiting its expansion. *See Campbell Marine Const., Inc. v. Town of Gilford*, 132 N.H. 495, 496, 567 A.2d 184, 185 (1989) (intent of ordinance determined from construction as a whole, not by construing isolated words or phrases). Consequently, the term "nonconforming use" as used in section 10-401(5) encompasses both nonconformities pertaining to dimensional requirements and nonconformities as to the actual use of the property. *See Town of Seabrook v. D'Agata*, 116 N.H. 472, 473, 362 A.2d 182, 183 (1976) ("expansion of nonconforming use" interpreted as expansion in nonconforming features of dwelling).

■ The original plans submitted to the ZBA for approval contained overhanging balconies on the upper floors of the addition. This proposed addition would violate the proscription of section 10-401(5) of the ordinance, which prohibits extension of a nonconforming use, because it would further encroach on minimum setback distances. The requirement that a variance be obtained before such construction could proceed was, therefore, valid.

Granite State seeks to take refuge in *Town of Seabrook v. D'Agata supra*, and *Yocum Zoning Case*, 393 Pa. 148, 154, 141 A.2d 601, 605 (1958), to support its position that no variance for its proposed expansion was required. Its reliance on these cases, however, is misplaced. In *D'Agata*, the property owner sought to enclose a previously open carport in an area under the second floor of a portion of the existing building, and we specifically noted that the addition would not "affect the proximity of the dwelling to the sidelines." *Town of Seabrook v. D'Agata, supra* at 473, 362 A.2d at 183. Similarly, in Yocum, admittedly a closer case, the owner sought to extend vertically the front porch of the building to conform in height with the rest of the structure and to extend the second floor horizontally so that the front line would conform with the front line of the first floor. *Yocum Zoning Case, supra* at 151, 141 A.2d at 603. The court likewise stated that "[t]he contemplated construction would require no additional land area and no further encroachment on either the front yard or side yard 'set backs.'" *Yocum Zoning Case, supra* at 151, 141 A.2d at 604.

· Instead, we find *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102 (Me. 1984), to be more analogous to the case before us. In that case, the property owner sought a building permit to build and use a deck on the roof of its existing restaurant. *Id.* at 103. The building was nonconforming because its setbacks did not meet the requirements of the local zoning ordinance. *Id.* The applicable ordinance governing nonconformities provided: "No lawfully non-conforming use of buildings or land shall be changed, extended, or enlarged in any manner for any purpose not permitted under this Ordinance, except as may be permitted as a variance, not as an exception." *Id.* at 104. The property owner argued that because the roof deck did not encroach any further into the nonconforming setbacks than did the existing walls of the restaurant, it did not constitute an expansion of the nonconformity. *Id.* at 105. The Maine Supreme Judicial Court disagreed and held, "When an ordinance prohibits enlargement of a nonconforming building, a landowner cannot as a matter of right alter the structure, even if the alteration does not increase the nonconformity." *Id.*

A prior discussion of the expansion of nonconforming uses is found in *New London Land Use Association v. New London Zoning Board*, 130 N.H. 510, 543 A.2d 1385 (1988). In that case, we stated that because nonconforming uses violate the spirit of zoning laws, any enlargement or extension must be carefully limited to promote the purpose of reducing them to conformity as quickly as possible. *Id.* at 518, 543 A.2d at 1389. In determining whether a nonconforming use may be expanded or changed, we look to "the extent to which the challenged use reflects the nature and purpose of the prevailing nonconforming use, whether the challenged use is merely a different manner of using the original nonconforming use or whether it constitutes a different use, and whether the challenged use will have a substantially different impact upon the neighborhood." *Id.* at 517, 543 A.2d at 1388 (citation omitted). The ZBA could justly conclude that the transformation of a one-story office building to a four-story office/parking complex would alter the purpose, change the use, or affect the neighborhood in such a manner as to require a variance.

Granite State's proposed addition is very simply an expansion of a nonconforming use. The enlargement of such use is carefully limited under the general policy of zoning ordinances. *Town of Derry v. Simonsen*, 117 N.H. 1010, 1016, 380 A.2d 1101, 1105 (1977). This policy is based on the premise that if nonconforming uses are restricted as

to change, expansion, or alteration, they will lose vitality and ultimately will expire. 4 E. ZIEGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 51.07 (4th ed. 1991). This case is readily distinguishable from *Cohen v. Town of Henniker*, a case which we also decide today, because *Cohen* relies on RSA 356-B:5, which governs municipal regulation of condominium development. Here, there is no special legislative pronouncement regarding regulation of nonconforming uses.

Accordingly, we hold that a variance was required to add the proposed three stories and, therefore, affirm the trial court's ruling. Because our holding on this issue is dispositive, we do not reach the issues raised by the City and the intervenors in their cross-appeal.

*Affirmed.*

All concurred.