# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0287, <u>R. Kenneth Connolly & a. v. Town of Madison</u>, the court on February 23, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The plaintiffs, R. Kenneth Connolly, R. Kevin Connolly, and Christopher Connolly, appeal a decision of the Superior Court (<u>Ignatius</u>, J.) to uphold the determination of the zoning board of adjustment (ZBA) of the defendant, the Town of Madison (Town), that the intervenors, Mark and Teresa Richey, may expand their nonconforming structure by relying upon a 2009 height variance granted to the property's prior owners and without obtaining a variance from the ordinance's so-called "50% limitation." We reverse and remand.

The relevant facts follow. The intervenors' residence is located on Silver Lake in Madison in the rural residential zoning district where the setbacks are 75 feet from the shoreline and 25 feet from the side lot lines. Structures in the rural residential zoning district may not be more than two and one-half stories high or 36 feet in height. The existing residence has 1,984 square feet of living space on a single floor and an attached 326-square-foot garage. According to the intervenors, the existing house also has a full basement that is "roughly the same size as the existing structure." The existing structure does not conform either to the 25-foot property line setback on the property's left side or to the 75-foot shoreline setback. The elevation of the highest point of the existing structure's roofline is 494 feet and 11 inches above sea level. The plaintiffs own abutting property.

Preexisting, nonconforming uses and structures, such as the existing structure, are governed by section 1.3 of the zoning ordinance. Section 1.3(B) provides:

> Any structure existing at the time of the original passage of this Ordinance, March 1987, which does not conform to the maximum height limitations and/or minimum setbacks, shall have the right to continue indefinitely or may be demolished and reconstructed within one (1) year.

> Legally established structures, which do not conform to present setback requirements, may be expanded in size, provided the

addition or expansion complies with current setback requirements, or:

The setbacks to the expanded structure are not less than the non-conforming setbacks to the original structure; and

The expanded structure is no closer than the existing non-conforming structure to the high-water line; and

The expanded structure is no taller above sea level than the highest roofline of the existing structure;

Any such expansion shall be limited in size to a total of fifty-percent (50%) of the square foot area of the first floor footprint of the existing structure as of March 2007, not including decks, chimneys, etc.

Madison, N.H., Rev. Ordinances art. I, § 1.3(B) (2015).

In 2009, the prior owners of the property proposed to add a 992 square-foot second story to the existing structure. Because the proposed structure would be approximately 9 feet taller than the existing structure (494 feet, 11 inches), they sought and obtained a variance from the height requirement in section 1.3(B).

The ZBA granted the variance "subject to" the following "listed conditions": (1) "[t]he permissible upward expansion shall be limited to nine hundred ninety-two (992) square feet"; (2) "[t]he proposed roofline will not exceed 513.92' per NAVD 1929 (North American Vertical Detail)";[1] and (3) "[t]he existing footprint shall not expand laterally." The prior owners never acted upon the 2009 variance, and, although the Town could have amended its zoning ordinance to terminate variances granted before August 2013, it did not do so. See RSA 674:33, I-a(b) (Supp. 2020). Thus, the 2009 variance did not expire.

The intervenors seek to demolish the existing structure and, in its place, build a new house with an attached two-story garage. The new structure (the house and the garage) would comprise 3,364 square feet on the first floor, 733 square feet on the second floor, and a 2,759-square-foot basement. The proposed structure would be 18.7 feet from the high water line of Silver Lake. The elevation of the highest point of the proposed structure's roofline would be 503 feet and 7.5 inches above sea level.

The ZBA determined that the intervenors' proposed structure is allowed by section 1.3(B) of the ordinance, without a variance. As relevant to this appeal, the ZBA decided that, although the proposed structure is taller above sea level than the existing structure, a variance is not required because the proposed structure will not exceed the height allowed by the 2009 variance

---

[1] Using the NAVD of 1988, 513.92' is equivalent to 503 feet and 11 inches.

(503 feet and 11 inches above sea level).  The ZBA further decided that the 50% restriction applied only to the nonconforming part of the structure.  The ZBA found that: (1) 1,491 feet of the existing first floor structure's square footage is nonconforming; (2) 1,523 feet of the proposed structure's square footage on the first floor will be nonconforming; (3) to comply with the 50% restriction, the proposed structure's nonconforming square footage must be less than 2,236.5 (1,491 + 745.5) feet; and (4) because 1,523 is less than 2,236.5, the proposed structure complies with the 50% restriction.  The trial court upheld the ZBA's decision.  This appeal followed.

"Our review in zoning cases is limited."  Dietz v. Town of Tuftonboro, 171 N.H. 614, 618 (2019) (quotation omitted).  The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the trial court.  Id.  The factual findings of the ZBA are deemed prima facie lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it, that the ZBA's decision is unreasonable.  Id.  The trial court's review is not to determine whether it agrees with the ZBA's findings, but rather, to determine whether there is evidence upon which they could have been reasonably based.  Id.  The trial court does not sit "as a 'super zoning board.'"  Rochester City Council v. Rochester Zoning Bd. Of Adjustment, 171 N.H. 271, 275 (2018) (quotation omitted).  The trial court reviews the ZBA's statutory interpretation and its interpretation of zoning ordinances de novo.  See Dietz, 171 N.H. at 618.  We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous.  Id.  We review the trial court's rulings on issues of law de novo.  See Merriam Farm, Inc. v. Town of Surry, 168 N.H. 197, 199 (2015).

The interpretation of an ordinance presents a question of law, and "requires us to determine the intent of the enacting body."  Feins v. Town of Wilmot, 154 N.H. 715, 719 (2007) (quotation omitted).  We use the traditional rules of statutory construction when interpreting zoning ordinances.  Id.  We construe the words and phrases of an ordinance according to the common and approved usage of the language.  Town of Carroll v. Rines, 164 N.H. 523, 526 (2013).  Furthermore, we determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases.  Feins, 154 N.H. at 719.  We "can neither ignore the plain language of the [ordinance] nor add words which the lawmakers did not see fit to include."  Bovaird v. N.H. Dep't of Admin. Servs., 166 N.H. 755, 759 (2014) (quotation omitted).  "When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent."  Rines, 164 N.H. at 526.

We first address whether the trial court erred by upholding the ZBA's determination that the intervenors could rely upon the 2009 variance and need not have obtained a new variance from the height restriction in the ordinance.

3

The trial court accepted the Town's assertion that the statement in the variance that "[t]he existing footprint shall not expand laterally," simply referred to the fact that the prior owners sought to expand the structure only vertically, and was not a condition of approval. The plaintiffs argue that in so doing, the trial court erred. We agree.

Although we have stated that the scope of a variance generally presents "a question of fact for the ZBA," 1808 Corp. v. Town of New Ipswich, 161 N.H. 772, 775 (2011), here, because the conditions were set forth in the notice of decision, the question of whether the 2009 variance was subject to those conditions presents a question of law. See In the Matter of Patient & Patient, 170 N.H. 252, 254 (2017) (explaining that the interpretation of written documents is a question of law that we review de novo). The cases cited by the Town are distinguishable because, in those cases, the notice of decision listed no conditions to which the variance was subject.

The 2009 variance expressly states that the grant is "subject to . . . conditions," including that "[t]he existing footprint shall not expand laterally." The statement that "[t]he existing footprint shall not expand laterally," therefore, was a condition of approval. Because there is no dispute that the proposed structure would expand the existing footprint, we conclude, as a matter of law, that the intervenors' proposed structure violates a condition of the 2009 variance. Accordingly, the intervenors cannot rely on that variance to build their proposed structure.

In arguing for a contrary result, the Town contends that we should view the ZBA's decision "as effectively modifying" the 2009 variance, "such that the 'no lateral expansion' condition no longer applies." See Pope v. Little Boar's Head Dist., 145 N.H. 531, 535 (2000) (stating that "[a ZBA] has the power to modify conditions previously imposed with respect to the grant of a variance" (quotation omitted)). The certified record does not support our doing so.

Because the issue is likely to arise on remand, in the interests of judicial economy, we next consider whether the trial court erred in concluding that the proposed structure complies with the 50% limitation set forth in section 1.3(B). The 50% limitation provides as follows: "Any such expansion shall be limited in size to a total of fifty-percent (50%) of the square foot area of the first floor footprint of the existing structure as of March 2007, not including decks, chimneys, etc." Madison, N.H., Rev. Ordinances art. I, § 1.3(B).

The Town and the intervenors argue that the phrase "[a]ny such expansion" refers "only to horizontal (lateral at ground level) expansion of the portions of non-conforming structures that are outside of the legal building envelope [i.e., only to footprint expansion within the setback], but not to horizontal expansion within the legal building envelope, and not at all to vertical expansion." The plaintiffs counter that the phrase "[a]ny such

4

expansion" refers to <u>any</u> expansion, not merely expansion of the footprint within the setback.  We agree with the plaintiffs.

The 50% limitation must be interpreted in context.  The 50% limitation applies only when the expansion of a nonconforming structure does <u>not</u> comply with current setback requirements.  In those circumstances, section 1.3(B) imposes four requirements: (1) "[t]he setbacks to the expanded structure" must not be "less than the non-conforming setbacks to the original structure"; (2) the expanded structure must not be "closer than the existing non-conforming structure to the high-water line"; (3) the expanded structure must not be "taller above sea level than the highest roofline of the existing structure"; and (4) "[a]ny such expansion" must comply with the 50% limitation.

The expansion to which the 50% limitation refers is the expansion referenced in requirements (1), (2), and (3), and the word "such" in the 50% limitation refers to the expansion referenced in the prior three paragraphs. While requirements (1) and (2) refer to horizontal expansions, requirement (3) refers to vertical expansions.  Thus, viewed in context, the phrase "[a]ny such expansion" refers to the <u>entire</u> "expanded structure," not just to the expansion of the structure's footprint within the setback.  See <u>Granite State Minerals v. City of Portsmouth</u>, 134 N.H. 408, 411-14 (1991) (ruling that a proposal to expand a nonconforming structure vertically, by adding three stories to it, was prohibited under an ordinance that precluded any "increase in the extent of the non-conforming use of a structure" (quotation omitted)).

The construction of section 1.3(B) urged by the Town and the intervenors requires that we add language to that section, which the drafters did not see fit to include.  This we may not do.  See <u>Batchelder v. Town of Plymouth Zoning Bd. of Adjustment</u>, 160 N.H. 253, 256-57 (2010).

The Town contends that the sole purpose of section 1.3(B) is to limit expansion within the setback, and that our interpretation not only fails to advance that purpose, but also unfairly restricts the expansion of structures that are only minimally nonconforming.  However, limiting the expansion of structures "that are only minimally nonconforming" is consistent with general zoning policy.  "[T]he ultimate purpose of zoning regulations is to reduce nonconforming uses" and structures "to conformity as quickly as possible." <u>Peabody v. Town of Windham</u>, 142 N.H. 488, 493 (1997).  In addition, we have held that a zoning ordinance may prohibit the vertical expansion of a structure with a nonconforming footprint — even if the footprint is not expanded.  See <u>Granite State Minerals</u>, 134 N.H. at 410-11.

Moreover, our role is to interpret section 1.3(B) as written.  See <u>Batchelder</u>, 160 N.H. at 256-57.  The 50% limitation reflects the policy choice by Town voters to discourage and strictly limit expansion of nonconforming structures within current setbacks.  Section 1.3(B) gives the owners of

5

nonconforming structures a choice: if their proposed expansion complies with all setbacks, then the 50% limitation is not triggered; however, if the expansion does not comply with all setbacks, then the limitation does apply. It is not our role to second-guess this policy decision. See Taylor v. Town of Plaistow, 152 N.H. 142, 145 (2005).

With this understanding of section 1.3(B), we now apply the 50% limitation to the proposed structure. The existing one-story structure is 2,310 square feet. Because a portion of the expansion does not comply with setback requirements, the allowed expansion is 1,155 square feet. The proposed 6,856-square-foot structure would expand the first floor footprint and add a second story and basement. As the trial court observed, this would "constitute an expansion of 4,546 square feet over the existing building." Accordingly, the intervenors must obtain a variance from the 50% provision in order to build the proposed structure. See RSA 674:33, I(a)(2) (Supp. 2020) (permitting a ZBA to grant a variance from the terms of a zoning ordinance when specified criteria are met).

In sum, we reverse the trial court's rulings that the intervenors may use the 2009 variance to build the proposed structure and that their proposed structure complies with the 50% limitation on expansion. Given our decision, we need not address the plaintiffs' remaining appellate issues. In addition, all issues raised in the plaintiffs' notice of appeal that they have not briefed are deemed waived. See State v. Scott, 167 N.H. 634, 643 (2015).

Reversed and remanded.

HICKS and BASSETT, JJ., concurred; ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, concurred; HANTZ MARCONI and DONOVAN, JJ., concurred in part and dissented in part.

HANTZ MARCONI and DONOVAN, JJ., concurring in part and dissenting in part. We agree with the majority that the trial court erred by upholding the ZBA's determination that the intervenors could rely upon the 2009 variance and need not have obtained a new variance from the height restriction in the ordinance. We dissent from the majority's conclusion that the trial court also erred by upholding the ZBA's interpretation of the 50% restriction.

We agree with the trial court that the ZBA's interpretation of the zoning ordinance was "neither unreasonable nor unlawful" and was "not inconsistent with the plain language of the Ordinance." We also agree with the trial court that "[a]pplying the 50% expansion cap on the non-conforming part of the existing building, without restricting the conforming portion of the building, reflects a sound policy that the court will not disturb." See Peabody v. Town of Windham, 142 N.H. 488, 493 (1997) (explaining that "the ultimate purpose of zoning regulations is to reduce nonconforming uses to conformity as quickly as

6

possible"). Applying the 50% restriction as interpreted by the ZBA is consistent as well with a municipality's obligation to enact or amend zoning ordinances only when doing so promotes "the health, safety, or the general welfare of the community." RSA 674:16, I (2016). Such legitimate regulatory purposes are served by allowing the expansion of a nonconforming structure that does not make the structure more nonconforming.

By contrast, in a case where the existing footprint of a one-story home is not enlarged, the majority's holding would limit the addition of a second floor to only half the first floor footprint. Such a restriction does not contribute to the health, safety or welfare of the community, is inconsistent with the owners' right to the reasonable use of their property, ignores the reference to "footprint" in this ordinance, and dispenses with the required evaluation of the extent to which the challenged expansion impacts the neighborhood. See Granite State Minerals v. City of Portsmouth, 134 N.H. 408, 413 (1991). We would not construe the ordinance to impose this unreasonable and arguably unconstitutional restriction. See Appeal of Public Serv. Co. of N.H., 122 N.H. 919, 922 (1982) ("A statute is to be construed to avoid a conflict with constitutional rights whenever reasonably possible.").

Accordingly, because the trial court in this case (and the ZBA) correctly determined that the proposed project complies with the 50% restriction, we would uphold that determination.

**Timothy A. Gudas,**
**Clerk**

7